1998-NMCA-153

966 P.2d 768

**STATE of New Mexico, Plaintiff–Appellee,**

**v.**

**Vincent Michael DURAN, Defendant–Appellant.**

**No. 18,787.**

Court of Appeals of New Mexico.

Aug. 18, 1998.

Certiorari Denied, No. 25,353, Oct. 13, 1998.

Tom Udall, Attorney General, M. Victoria Wilson, Ass't Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Karl Erich Martell, Ass't Appellate Defender, Santa Fe, for Appellant.

## OPINION

DONNELLY, Judge.

{1}  Defendant appeals from a judgment and sentence entered after a jury trial, wherein he was convicted of stalking, harassment, and two counts of criminal trespass. We address the following issues on appeal: (1) whether Defendant's convictions for stalking and harassment violate constitutional double jeopardy protections, (2) whether the New Mexico criminal harassment statute, NMSA 1978, § 30–3A–2 (1993), is unconstitutionally vague, (3) whether Defendant's convictions were supported by sufficient evidence, and (4) whether Defendant was denied due process of law because of alleged bias of the trial judge.  We affirm in part and reverse in part.

## FACTS

{2}  On April 1, 1995, at approximately 1:30 a.m., Nancy Hills awakened and saw a man, who she subsequently identified as Defendant, on a bicycle in front of her residence.  She continued to observe Defendant and saw him go up to her front yard, dismount, and then begin peering into the windows of her home.  Defendant pressed his face up against the glass of her bedroom window and then, after seeing Hills, ran from her yard.  Hills telephoned the police and then saw that Defendant had gone across the street, his pants were down around his legs, and he was masturbating.

{3}  A few weeks later, Hills heard noises outside the bedroom of her home.  She opened the blinds and she saw Defendant in the bushes looking into the windows of a neighbor's home.  One evening in August 1995, Hills again discovered Defendant

standing near her house and looking into her windows. A few days later, on August 31, 1995, Hills once more heard noises outside the windows of her home. She opened the curtains and observed Defendant standing by her window. He ran away when she screamed.

{4} On June 1, 1996, at approximately 12:30 a.m., Hills drove up to her home and observed that her porch light was out, although she had left it on earlier in the evening. She saw Defendant in some bushes near her front door. Hills stayed in her car and Defendant fled. She subsequently discovered that the light fixture on her porch had been dismantled and that, when Defendant ran away, he grabbed the light fixture which was laying on her front lawn.

{5} Sergeant Thomas Martin, an Albuquerque City police officer, testified that on July 17, 1996, he and another officer received a radio dispatch that a person was looking into a residence. When the officers arrived, they stopped Defendant who was walking away from the area. Shortly after 11:00 p.m., Hills heard voices outside and saw the police talking to Defendant near her house. She went outside and told the officers that Defendant was the individual who had been bothering her and several of her neighbors for over a year. The following day, the police arrested Defendant and he was charged with harassment, stalking, and criminal trespass.

{6} On another occasion that same year, Hills saw Defendant walking toward her and she told him to stay away from her. In May 1997, two weeks prior to trial, Hills again saw Defendant as she was returning from a walk at dusk. She stated that Defendant rode by her on a bicycle, then turned around and started slowly following her. She asked two women in a nearby house to accompany her to her house. When she returned home, she again called the police. Hills testified that as a result of these incidents she was angry and scared. As a result of Defendant's actions, Hills had all the bushes removed by her front door, she had iron rods put on the windows and doors, and she had a motion detector light installed. Hills also testified that because of these experiences, she tries to avoid going out of her home at night and she carries mace with her. Hills testified that she had observed Defendant walking on her property or around the area where she lived more than twenty different times.

{7} Eugena Rodriguez testified that on May 5, 1997, she was visiting a friend in the neighborhood near where Hills lives. She stated that sometime after 9:00 p.m., Hills came to the door of her friend's home and that Hills appeared nervous and frantic. She stated that Hills asked if they would walk her home. They agreed, and they accompanied her to her home. As Rodriguez and her friend were returning back to the friend's home, a man suddenly came out of the bushes with a bicycle. They watched him ride slowly away and then ride toward Hills' home. They saw him dismount from the bicycle and run up to Hills' home. Rodriguez and her friend then returned home, got into a car, and drove to Hills' residence to see if she was safe. Hills came to the door, indicated that she was all right, but told them she had called 911.

{8} Rodriguez stated that although she could not clearly see the individual who she observed come out of the bushes and ride off on his bicycle, he had long hair that covered his face. She believed the individual was in his late twenties.

{9} Nanette Concotelli–DeFronzo also testified as a witness for the State. She stated that she moved into the neighborhood near Hills at the end of May 1995. In mid-July 1995 she stated that she saw Defendant at Hills' home peering into the windows of her home. Some months later, on June 28, 1996, she stated that she was packing her belongings to move and she heard noises outside her bedroom window. She went to her kitchen and pulled the window blinds up and saw Defendant standing outside looking at her. She subsequently discovered that the outside light on her house had been unscrewed and that a similar thing had happened to the porch light on Hills' house. She stated that when she saw Defendant's face, she became frightened and phoned both Hills and the police. The police arrived and informed her that they had not found anybody

outside her home, but they had seen somebody riding a bicycle away from the area as they drove up.

{10} At the conclusion of the jury trial, the jury returned verdicts convicting Defendant of harassment, stalking, and two counts of criminal trespass.

## DISCUSSION

### Claim of Double Jeopardy

{11} Defendant argues that the jury verdicts convicting him of both harassment under Section 30–3A–2 and stalking under NMSA 1978, § 30–3A–3 (1993), and the trial court's imposition of consecutive sentences for both offenses improperly subjected him to multiple punishments and violated his right to be free from double jeopardy.

{12} In addition to the prohibition contained in the Fifth Amendment to the United States Constitution, New Mexico has adopted both constitutional and statutory prohibitions against an individual being placed in double jeopardy. See N.M. Const. art. II, § 15; NMSA 1978, § 30–1–10 (1963). The protections against double jeopardy provide safeguards against successive prosecutions after an acquittal, a second prosecution after conviction, and multiple punishments for the same offenses. See State v. Cooper, 1997–NMSC–058, ¶ 52, 124 N.M. 277, 949 P.2d 660; State v. Trevino, 113 N.M. 804, 808, 833 P.2d 1170, 1174 (Ct.App. 1991); see also State v. Mora, 1997–NMSC–060, ¶ 64, 124 N.M. 346, 950 P.2d 789. It is the latter protection that Defendant invokes in the instant case.

{13} The grand jury indictment charging Defendant with stalking and the separate charge of harassment alleged that the acts of Defendant underlying both offenses occurred "on or between April 1, 1995 and July 17, 1996." The versions of the harassment and the stalking statutes under which Defendant was indicted and convicted, were enacted by the Legislature in 1993. See 1993 N.M.Laws, ch. 86, §§ 2, 3.[1]

{14} In analyzing Defendant's double jeopardy claim, a reviewing court first determines whether the conduct of Defendant was unitary in nature so that the same acts were used to prove a violation of both statutes. See State v. Livernois, 1997–NMSC–019, ¶ 19, 123 N.M. 128, 934 P.2d 1057; see also State v. Fuentes, 119 N.M. 104, 105, 888 P.2d 986, 987 (Ct.App.1994). As set forth in Swafford v. State, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991), multiple punishment for conduct that is not unitary does not contravene double jeopardy protections. Conversely, however, if the conduct is unitary, the court must then examine the statutes in question to determine whether the Legislature intended that multiple punishments could be imposed for different criminal offenses resulting from the same conduct. See id.

{15} The first inquiry, whether the conduct is unitary, is a mixed question of law and fact necessitating a careful review of the elements of the offenses in question and the facts elicited at trial, which we review de novo. See State v. Attaway, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994). The second inquiry, however, is a legal question involving scrutiny of the elements of the statutes in question. See Swafford, 112 N.M. at 8, 810 P.2d at 1228.

{16} Defendant argues, and the State does not dispute Defendant's claim, that the same pattern of conduct was used to prove both the crimes of harassment and of stalking. Thus, we turn our inquiry to the issue of whether Defendant may be punished separately for identical acts underlying the charges of both harassment and stalking. Whether the Legislature intended multiple punishments for unitary conduct, involves a determination of whether either of the statutes in question requires proof of one or more elements which the other does not.

---

1. In 1997, after the events in this case, the Legislature repealed and reenacted Section 30–3A–2, enacting a minor change in the text of the harassment statute and modifying the offense of stalking to change the elements of such offense and increase the penalty for a second or subsequent conviction of stalking. See 1997 N.M.Laws, ch. 10, §§ 2, 3 (providing that upon a second or subsequent conviction, the offense is punishable as a fourth-degree felony). The 1997 amendment also enacted a new section creating the offense of aggravated stalking. See NMSA 1978, § 30–3A–3.1 (1997).

*See Mora,* 1997–NMSC–060, ¶ 66, 124 N.M. 346, 950 P.2d 789 (applying test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)); *State v. Gonzales,* 1997–NMCA–039, ¶ 15, 123 N.M. 337, 940 P.2d 185 (defendant convicted of contempt for violating domestic violence protection order not shielded by double jeopardy for subsequent prosecution for stalking and harassment).

{17} As noted by this Court in *State v. Pisio,* 119 N.M. 252, 261, 889 P.2d 860, 869 (Ct.App.1994):

> [W]e should presume a legislative intent to punish as a single offense unitary conduct underlying multiple counts in certain circumstances. Those circumstances include not only unitary conduct resulting in charged offenses that have exactly the same elements, *but also unitary conduct resulting in a charge of two offenses when one subsumes the other.* [Emphasis added.]

{18} Comparison of the offenses of harassment and stalking, as they existed at the time Defendant was indicted and under the facts existing here, fails to clearly indicate that the Legislature intended that the same unitary conduct underlying the charges of harassment and stalking be punished as distinct offenses. The statute setting out the offense of harassment, as set forth in Section 30–3A–2, during the times alleged in the indictment, stated in pertinent part:

> A. *Harassment consists of knowingly pursuing a pattern of conduct that is intended to annoy, seriously alarm or terrorize another person and which serves no lawful purpose.* The conduct must be such that it would cause a reasonable person to suffer substantial distress. [Emphasis added.]

{19} The offense of stalking, as defined in Section 30–3A–3 provided in pertinent part:

> A. *Stalking consists of knowingly pursuing a pattern of conduct that poses a credible threat to another person and that is intended to place that person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint;* provided that, in furtherance of the threat,

the stalker must commit one or more of the following acts on more than one occasion:

> (1) following a person, other than in the residence of the stalker;

> (2) placing a person under surveillance by remaining present outside that person's school, residence, workplace or vehicle or any other place frequented by that person other than in the residence of the stalker; or

> (3) *harassing a person.* [Emphasis added.]

{20} The State asserts that harassment is not subsumed within the offense of stalking because each offense requires proof of a different intent. The State also contends that Defendant may be punished for committing the offenses of both harassment and stalking based upon the same identical conduct because the two offenses are directed at protecting different social norms and address different social evils.

{21} Examination of the language of the two statutes, however, we conclude, belies these claims. The wording of the statutes indicates that the intent required to be proven for the crimes of harassment and stalking overlap in part. For example, harassment "consists of knowingly pursuing a pattern of conduct that is intended to annoy, seriously alarm or terrorize another person...." Section 30–3A–2(A); *see also* UJI 14–330 NMRA 1998. Similarly, the crime of stalking provides that the offense "consists of knowingly pursuing a pattern of conduct that poses a credible threat to another person and that is intended to place that person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint...." Section 30–3A–3(A); *see also* UJI 14–331 NMRA 1998. Certainly an intent on the part of a perpetrator to "seriously alarm or terrorize" the victim, may include acts intended to place a victim "in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint...."

{22} The jury was instructed on only two alternative theories of harassment requiring that the State prove that Defendant committed the offense with an intent to *annoy* or *an*

*intent to seriously alarm* Hills. In instructing the jury concerning the intent necessary to prove the crime of stalking, the jury was required to find that "[D]efendant intended to place [the victim] in reasonable apprehension of *Sexual Assault or Great Bodily Harm* [.]" (Emphasis added.) We conclude that the intent to annoy or seriously alarm through a pattern of conduct consisting of repeated acts of harassment, as charged in Count 2 of the indictment (harassment), is subsumed with the offense of stalking under the facts herein.

{23} Moreover, as previously indicated, one of the elements of stalking that the State may prove, alternatively, is "harassing." The Use Note to the Uniform Jury Instruction for stalking, 14–331, indicates that if the alternative element of "harassing" is used, the court must also instruct on the crime of harassment, including all its essential elements. *See* UJI 14–330. We have previously stated that " '[w]hen a criminal statute is written in the alternative, it creates separate offenses for each alternative that are treated separately for double jeopardy purposes.' " *Fuentes,* 119 N.M. at 107, 888 P.2d at 989 (quoting *State v. Franklin,* 116 N.M. 565, 571, 865 P.2d 1209, 1215 (Ct.App.1993)).

{24} In the absence of some indicia indicating the Legislature intended that an individual could be punished for convictions for two different offenses based upon the same conduct, the Double Jeopardy Clause of both the United States and the New Mexico Constitutions proscribe cumulative punishment. *See Missouri v. Hunter,* 459 U.S. 359, 365–68, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Swafford,* 112 N.M. at 14–15, 810 P.2d at 1234–35; *see also Mora,* 1997–NMSC–060, ¶ 64, 124 N.M. 346, 950 P.2d 789. If one statute is subsumed within another, the statutes are treated as the same for double jeopardy purposes. *See Cooper,* 1997–NMSC–058, ¶ 56, 124 N.M. 277, 949 P.2d 660.

{25} Similarly, our Supreme Court in *State v. Gonzales,* 113 N.M. 221, 225, 824 P.2d 1023, 1027 (1992), held that if two statutes require

proof of an element absent in the other, we presume that the legislature intended to punish each offense separately. [*Swafford,* 112 N.M.] at 14, 810 P.2d at 1234. However, this presumption can be rebutted by showing that the legislature had a contrary intent. To determine legislative intent, we look to the "language, history, and subject of the statutes." *Id.* Legislative intent may be gleaned from the statutory schemes by identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors. *Id.* at 14–15, 810 P.2d at 1234–35.

{26} Analysis of the offenses of harassment and stalking, we think, dispels the argument that the two offenses were directed at different social norms or policies. We do not believe that the policies underlying the enactment of the offenses of harassment and stalking can be said to materially differ. In 1993 when the Legislature initially adopted both offenses, it enacted such legislation at the same time and designated such legislation as the "Harassment and Stalking Act." *See* 1993 N.M.Laws, ch. 86, § 1.[2] While it is clear that stalking may be committed in several alternative ways, where both harassment and stalking are charged against the same defendant and the two offenses arise out of the same unitary conduct, the offense of harassment is subsumed into the offense of stalking.

{27} As observed by M. Katherine Boychuk, *Are Stalking Laws Unconstitutionally Vague or Overbroad?,* 88 Nw.U.L.Rev. 769, 769 (1994), "[f]orty-eight states and the District of Columbia now have laws that make it a crime to stalk another person—that is, to follow and harass that person." Boychuk further notes that New Mexico's stalking act is patterned in part after that of California (the first state to enact a stalking law), and necessitates proof of three basic elements—

2. In repealing and reenacting former Sections 30–3A–1 to –4, the Legislature again adopted the offenses of harassment and stalking in the same act under the title of the "Harassment and Stalking Act."

proof of "an act, a threat, and criminal intent." *Id.* at 775. The author additionally observes that "[h]arassment is a key element of almost every state's stalking law. In most cases, harassment alone can satisfy the act requirement [of the offense of stalking]." *Id.* at 784 (footnote omitted). Under Section 30–3A–3(A)(3), one of the ways stalking may be proved is to show that the perpetrator intended to place another in fear of bodily harm and committed repeated acts of harassment against the victim. *See* UJI 14–331.[3] Although harassment is, under some circumstances, a component of the crime of stalking, New Mexico has also enacted a separate offense of harassment.

{28} As observed by our Supreme Court in *Swafford*, "[i]f several statutes are not only usually violated together, but also seem designed to protect the same social interest, the inference becomes strong that the function of the multiple statutes is only to allow alternative means of prosecution." 112 N.M. at 14, 810 P.2d at 1234. Similarly the *Swafford* Court noted that "[u]nless an intent to punish separately can be found through application of the canons of construction . . ., lenity is indicated and, in that event, it is to be presumed the legislature did not intend pyramiding punishments for the same offense." *Id.* at 15, 810 P.2d at 1235; *see also State v. Sosa*, 1997–NMSC–032, ¶ 36, 123 N.M. 564, 943 P.2d 1017; *State v. McGuire*, 110 N.M. 304, 308, 795 P.2d 996, 1000 (1990).

{29} Applying the above authorities to the record before us, we conclude that where the State relies on identical acts of an accused involving the same course of conduct to prove both the offenses of harassment and of stalking, double jeopardy provisions preclude multiple punishment. In such case the offense of harassment is subsumed into the offense of misdemeanor stalking.

*Constitutional Challenge*

{30} Defendant also argues that his conviction of harassment is invalid because the language of Section 30–3A–2 defining the offense of harassment is unconstitutionally vague. In furtherance of this challenge, he asserts that the statute does not provide him with fair warning as to the nature of the proscribed conduct. We disagree.

{31} In ascertaining whether a statute defining a criminal offense is sufficient to forestall a challenge of vagueness, the court reviews the statute in light of the facts of the case and the conduct which is prohibited by the statute. *See State v. Wood*, 117 N.M. 682, 686–87, 875 P.2d 1113, 1117–18 (Ct.App.1994). A constitutional challenge grounded upon a claim of vagueness involves a mixed question of law and fact that is reviewed de novo. *See State v. Flores*, 1996–NMCA–059, ¶ 6, 122 N.M. 84, 920 P.2d 1038. A strong presumption of constitutionality underlies each legislative enactment. *See Ortiz v. Taxation & Revenue Dep't*, 1998–NMCA–027, ¶ 5, 124 N.M. 677, 954 P.2d 109. A party challenging the constitutionality of a statute has the burden of proving it is unconstitutional beyond all reasonable doubt. *See State ex rel. Udall v. Public Employees Retirement Bd.*, 120 N.M. 786, 788, 907 P.2d 190, 192 (1995). Because the essence of a vagueness claim rests on a lack of notice, a party may not succeed on the claim if the statute clearly applies to the defendant's conduct. *See Garcia v. Village of Tijeras*, 108 N.M. 116, 118–19, 767 P.2d 355, 357–58 (Ct.App.1988).

{32} Defendant has not shown that he preserved this issue. *See State v. Muise*, 103 N.M. 382, 386, 707 P.2d 1192, 1196 (Ct.App. 1985) (even constitutional claim must be preserved). Moreover, even assuming arguendo that the issue was preserved, our review of the record herein demonstrates the existence of facts from which the jury could reasonably find that Defendant's acts and intent were to annoy or seriously alarm Hills. A person of ordinary intelligence would have known that such behavior was unlawful and would inflict substantial emotional distress upon the victim. *See State v. Gattis*, 105 N.M. 194, 200, 730 P.2d 497, 503 (Ct.App.1986) (statute is not unconstitutionally vague if it is set forth

---

3. On June 8, 1998, the Supreme Court entered an order, effective July 1, 1998, amending UJI 14–331 (setting out the elements of stalking), UJI 14–332 NMRA 1998 (defining "household member"), and UJI 14–333 NMRA 1998 (specifying the elements of aggravated stalking).

in such terms that an ordinary person exercising ordinary common sense can sufficiently understand and comply with its provisions); *see also State v. Lee,* 82 Wash.App. 298, 917 P.2d 159, 167 (Wash.Ct.App.1996) (statute's reliance on an objective test to prove conduct of defendant caused harm to victim provides reasonable standard to withstand constitutional challenge for vagueness).

### Sufficiency of Evidence

■■■■■ {33} Defendant additionally asserts that his convictions of harassment, stalking, and criminal trespass are not supported by substantial evidence. He asserts that the testimony by the witnesses presented by the State revealed that they saw him only at night and therefore their identifications of him as the alleged perpetrator were suspect. He also claims that the two charges of criminal trespass were not proven because Hills' property was not posted and he was never specifically told to leave the premises. In ascertaining the sufficiency of the evidence to support a conviction, a reviewing court determines whether there is substantial evidence of a direct or circumstantial nature to support a finding of guilt beyond a reasonable doubt with respect to every element essential to each conviction. *See State v. Carrasco,* 1996–NMCA–114, ¶ 4, 122 N.M. 554, 928 P.2d 939, *rev'd in part on other grounds,* 1997–NMSC–047, 124 N.M. 64, 946 P.2d 1075. " 'Substantial evidence is that evidence which is acceptable to a reasonable mind as adequate support for a conclusion.' " *See State v. Clifford,* 117 N.M. 508, 512, 873 P.2d 254, 258 (1994) (quoting *State v. Isiah,* 109 N.M. 21, 30, 781 P.2d 293, 302 (1989), *overruled on other grounds by State v. Lucero,* 116 N.M. 450, 453–54, 863 P.2d 1071, 1074–75 (1993)).

■■■■■{34} Posting of property is only one way to place an individual upon notice that he is not permitted upon another's property. Here, there was other direct and circumstantial evidence that Defendant knew he was not authorized to enter upon Hills' property. Hills stated that she observed Defendant upon her property on three separate occasions, including April 1, 1995, and August 31, 1995, and she specifically identified him as the person she saw at her home. She stated that she never gave Defendant permission to be on her property and that she told him clearly to "stop bothering her." Hills phoned the police on a number of occasions and Defendant ran from the property when he was observed to be trespassing. She informed the police when they finally stopped him near her home that she recognized Defendant as the person who had been bothering her. Defendant's actions in fleeing from her property when she observed him and her telephoning the police constitute both direct and circumstantial evidence that Defendant was aware he was not permitted on the property.

{35} Defendant also challenges his conviction on two counts of criminal trespass upon the property of Hills, noting that Concotelli–DeFronzo stated that she was unable to clearly identify Defendant. As pointed out by the State, however, Concotelli–DeFronzo's identification of Defendant was not essential to establish his commission of the crimes because Hills' testimony standing alone was sufficient to identify Defendant and detail the instances when he trespassed upon her property.

### Claim of Bias

■■■ {36} Defendant's final issue raised on appeal asserts that the trial judge was biased and the judge's actions deprived him of a fair trial. Our review of the record, however, indicates that this issue is without merit. We review claims of judicial bias to ascertain whether the conduct was such that it deprived an accused of a fair trial. *See Muise,* 103 N.M. at 389, 707 P.2d at 1199.

■■■ {37} First, Defendant claims that the trial court was biased because it denied his motion to compel the State to produce computer-generated records of 911 calls. In a pretrial motion to compel, Defendant sought discovery of police reports of any complaints made by Hills, Concotelli–DeFronzo, and others. Defendant argued that the only evidence of complaints to the police would be computer-generated records of 911 calls. Defense counsel also stated he was told by police officials that in order to obtain this information the computer that generated

the logs would have to be taken off-line and that the search would be very time-consuming. The trial court told defense counsel that it would not order the Albuquerque Police Department to take the computer off-line in order to perform the search, but that it would be willing to require the police department to download the information on a separate disk so that counsel could do the search. Defendant agreed to this procedure without voicing any objection.

{38} Second, Defendant alleges the trial judge demonstrated bias toward him because, when Defendant rejected a proposed plea agreement, the judge allegedly stated that he would impose a severe sentence if a jury subsequently found him guilty. These allegations, however, do not appear in the record. Defendant's failure to support this claim by the record precludes review by this Court on appeal. *See Wood,* 117 N.M. at 687, 875 P.2d at 1118.

{39} Third, Defendant points to comments made by the trial judge after the verdict, but before sentencing. After the jury returned its verdict, but prior to sentencing, the trial judge stated that he felt he should reconsider the conditions of Defendant's release in light of the guilty verdicts. Defense counsel urged the trial judge not to modify the terms of release. We do not believe the trial judge's statements concerning his decision to reevaluate the terms of Defendant's release evidence judicial bias.

{40} Defendant also points to a comment made by the trial court during his motion to reconsider the sentence. The trial court sentenced Defendant to 364 days on each of the four misdemeanor convictions, suspended one year of incarceration, and ordered that the sentences be served consecutively. The trial judge denied the motion to reconsider, stating that his decision to impose the sentence he had given was based on his concern that Defendant was "getting ready to do something very violent to those folks." The trial judge pointed out that he had made his decision only after giving serious thought to Defendant's case.

{41} This sentence imposed was also after the trial judge had reviewed the presentence report and the statements of counsel. In imposing a sentence or sentences upon a defendant, the trial judge is invested with discretion as to the length of the sentence, whether the sentence should be suspended or deferred, or made to run concurrently or consecutively within the guidelines imposed by the Legislature. *See State v. Duncan,* 117 N.M. 407, 410–11, 872 P.2d 380, 383–84 (Ct.App.1994). There is no abuse of discretion if the sentence imposed is consistent with the applicable statutory provisions. *See State v. Augustus,* 97 N.M. 100, 101, 637 P.2d 50, 51 (Ct.App.1981). The trial judge acted within his discretion and suspended one year of the sentence. Under these circumstances, Defendant has failed to demonstrate that the actions of the trial judge were biased.

*CONCLUSION*

{42} We affirm Defendant's convictions; however, because the convictions of harassment and stalking were based on unitary conduct and the offense of harassment was subsumed into the offense of stalking under the facts shown here, the cause is remanded to the trial court with instructions to vacate the judgment and sentence and to resentence Defendant consistent with the matters set forth herein.

{43} IT IS SO ORDERED.

APODACA, and BOSSON, JJ., concur.

