1 P.3d 429

2000-NMCA-033

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ronald CUMPTON, Defendant–Appellant.**

No. 20,216.

Court of Appeals of New Mexico.

Feb. 8, 2000.

Certiorari Denied, No. 26,215,
April 4, 2000.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Shelly A. Scott, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Ronald Cumpton (Defendant) appeals his sentence on a plea to several counts arising from a traffic accident resulting in death and bodily injury. Defendant pled guilty without a plea and disposition agreement to vehicular homicide, and he pled no contest to incidents involving death or great bodily harm, tampering with evidence, and unlawful taking of a motor vehicle. He received the basic sentences authorized by statute, with no aggravating or mitigating circumstances increasing or reducing them. Feeling there were mitigating factors which, as of right, should have entitled him to a reduction of his sentence, he appeals. Defendant also appeals claiming NMSA 1978, § 66-7-201 (1989) is vague, as there is no way to distinguish between subsections (B) and (C) in defining the elements of the crime. We disagree and affirm the district court on both issues.

## FACTS

{2} Defendant began the evening of April 12, 1998 around 4:00 or 5:00 in the afternoon by drinking and having an argument with his fiancee. The police were called and removed Defendant from the scene. He requested to be taken to his place of employment, where he picked up a company-owned 1992 International tanker truck and drove off. He drove from Artesia north to Lake Arthur and back. He had a beer with a hitchhiker he picked up and took another beer with him for the road. He visited his cousin Robert. This cousin and his wife told police Defendant was extremely drunk when he was at their house. Defendant left them and briefly visited another cousin's house. He began to return to his cousin Robert's house. At about 11:00 p.m., Defendant ran a stop sign at an intersection.

{3} As Defendant's truck crossed the intersection, Michelle Perea and her fiancé, Maurice Ingram, were simultaneously traveling across the intersection. Perea saw the truck was not stopping at the intersection and slammed on her brakes. Perea's vehicle struck the right rear tire and axle of the truck. Both air bags in Perea's vehicle deployed, pinning the occupants in the vehicle.

{4} The crash seriously injured Michelle Perea, fracturing her left femur, right ankle, and right arm. She was thirteen weeks pregnant with twins, one of whom died shortly after the accident, and the other of whom was born prematurely and also died. No direct evidence was presented as to the proximate cause of their deaths. Maurice Ingram, the father of the twins, died at the scene.

{5} Following the crash, Defendant exited his truck, went to the Perea car, removed Ms. Perea's and Mr. Ingram's eleven-month-old boy from a rear seat and handed him to a passerby. Defendant checked on Maurice Ingram, but could not find a pulse. He believed Ingram was dead. He attempted to free Perea from behind the steering wheel, but was unsuccessful. He asked a passerby if 911 had been called and was told it had. Defendant began to panic and called his cousin. He returned to the tanker and left the scene of the accident. He went to his cousin's house where he walked in the door, grabbed a bottle of Southern Comfort, and guzzled about half of it with the intention of masking his alcohol level at the time of the accident. Defendant was followed to his cousin's house from the accident scene by a witness. He was arrested at his cousin's house.

{6} Defendant was charged with homicide by vehicle, great bodily injury by vehicle,

knowingly leaving the scene of an accident involving death or personal injuries, tampering with evidence, and unlawful taking of a motor vehicle.

{7} Defendant entered pleas of guilty and no contest as noted above. There was no plea and disposition agreement; he pled "straight up" to the information. He was questioned by the district court as to his knowledge of the nature of the plea and the charges against him. The district judge then certified the results of the plea proceeding, indicating Defendant's voluntary and knowledgeable entry of the plea with understanding of its consequences. The district court sentenced him to:

Six (6) years, followed by Two (2) years statutory parole as to Count 1 [vehicular homicide];

Three (3) years, followed by Two (2) years statutory parole, as to each of Counts 2–3 [Great bodily injury by vehicle and accidents involving death or great bodily harm respectively]; and,

Eighteen (18) months, followed by One (1) year statutory parole as to each of Counts 4–5 [Tampering with evidence and Unlawful taking of a motor vehicle, respectively]. The sentence imposed in each Count shall run consecutively to each other.

The district court suspended all but fourteen (14) years in the custody of the Corrections Department and two (2) years statutory parole. Defendant entered an unconditional plea, never contested the case against him, and reserved no right to contest his sentence.

## DISCUSSION

### Sentence

{8} Felony sentencing by the district court is governed by NMSA 1978, § 31–18–15 (1993). Basic sentences for various degrees of crime are authorized; a sentence in a felony case is presumed by the statute to be the basic sentence. See § 31–18–15(B). The district court may alter the sentence in consideration of aggravating or mitigating circumstances as provided in other statutes. The statute requires the judge to put any aggravation or mitigation determinations on the record. See NMSA 1978, § 31–18–15.1 (1993). No record is required to be made

when the judge simply imposes the basic sentence for the particular degree of crime. Basic sentences were imposed by the court below.

{9} Defendant asserts the district court refused to consider mitigating evidence. The fact is the court merely did not mitigate. Defendant argues the sentences imposed by the district court are too harsh. The sentences are those prescribed as basic by the legislature.

{10} Accordingly, Defendant does not present us with a viable appellate issue to review. See State v. Augustus, 97 N.M. 100, 101, 637 P.2d 50, 51 (Ct.App.1981) (citing State v. Madrigal, 85 N.M. 496, 513 P.2d 1278 (Ct.App.1973), for the proposition that while sentences may be reviewed for abuse of discretion, there is no abuse of discretion if the sentence imposed is authorized by law).

{11} Defendant may well be a reformed, religious, and remorseful person as he argued below and on appeal; these are factors properly taken into account should a judge wish to mitigate a sentence. Defendant is also a person who got drunk, killed one person, injured another seriously, deprived an eleven-month-old child of his father, ran from the scene, and tried to conceal evidence of his crime. These could easily be germane facts should the judge wish to do otherwise. These facts were all known to the district court by way of the pre-sentence report, as Defendant told the court in his statement at sentencing.

{12} There is no obligation on the part of a judge to depart from the basic sentence. The opportunity for a district court to mitigate a sentence depends solely on the discretion of the court and on no entitlement derived from any qualities of the defendant. See State v. Sosa, 1996–NMSC–057, 122 N.M. 446, 448, 926 P.2d 299, 301; State v. Callaway, 109 N.M. 564, 569–70, 787 P.2d 1247, 1252–53 (Ct.App.1989), rev'd on other grounds, 109 N.M. 416, 785 P.2d 1035 (1990). The focus of Defendant's remorse has shifted in this appeal from the cost of human life and the suffering he caused, to remorse for acquiescing in his own punishment without objection. Defendant stated at

his sentencing, "Your Honor, I know you have the Pre-Sentence Report and are aware of everything that occurred. I was driving the vehicle that night and I accept full responsibility." Defendant's sentences for the crimes of which he was convicted were neither mitigated nor aggravated by the district court. Defendant is entitled to no more than a sentence prescribed by law, and he received one in this case.

### Vagueness of Statute Concerning Accident Involving Death or Personal Injuries

■ {13} Defendant also appeals his sentence for accident involving death or personal injuries, arguing the statute is vague because there is no way to distinguish between the elements of the offense contained in Section 66–7–201(B) and (C). Defendant is wrong. Section 66–7–201(B) states:

Any person failing to stop or to comply with the requirements of Section 66–7–203 NMSA 1978 where the accident results in great bodily harm or death is guilty of a fourth degree felony and shall be sentenced pursuant to the provisions of Section 31–18–15 NMSA 1978.

Section 66–7–201(C) states:

Any person who *knowingly fails* to stop or to comply with the requirements of Section 66–7–203 NMSA 1978 where the accident results in great bodily harm or death is guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31–18–15 NMSA 1978.

(Emphasis added.)

■ {14} All that is required of the statute is for it to be sufficiently complete in its description of the elements of the offense that it provides notice to a person of ordinary intelligence of the conduct proscribed by law. *See State v. Pierce,* 110 N.M. 76, 81, 792 P.2d 408, 413 (1990). Subsection (C) requires the additional element of knowing behavior not mentioned in the preceding section. Defendant argues the statute does not tell him what knowledge he should have had to be more criminally culpable for leaving the scene. Questions of knowledge are held to be questions of fact. *See State v. Rowell,* 119 N.M. 710, 717, 895 P.2d 232, 239 (Ct.App. 1995), *rev'd on other grounds,* 121 N.M. 111,

908 P.2d 1379 (1995); *see also People v. Gregory,* 217 Cal.App.3d 665, 266 Cal.Rptr. 527, 534 (1990) (defining "knowingly" as requiring only knowledge that the facts exist which bring the act or omission within the provisions of the code, not any knowledge of the unlawfulness of such act or omission); *Ballentine's Law Dictionary* 703 (3d ed.1969) (defining the most common meaning of knowingly as "having knowledge, not of the act's unlawfulness, but merely knowledge of those facts which are essential to make it unlawful"). "A statute requiring the fact-finder to determine whether a defendant committed a knowing or willful violation is less likely to be found vague because the jury must determine scienter." *Rowell,* 119 N.M. at 718, 895 P.2d at 240. "In ascertaining whether a statute defining a criminal offense is sufficient to forestall a challenge of vagueness, the court reviews the statute in light of the facts of the case and the conduct which is prohibited by the statute." *State v. Duran,* 1998–NMCA–153, ¶ 31, 126 N.M. 60, 966 P.2d 768 (citing *State v. Wood,* 117 N.M. 682, 686–87, 875 P.2d 1113, 1117–18 (Ct.App.1994)).

■ {15} The question Defendant poses is therefore better answered by looking at what knowledge he possessed when he left the scene of the accident. Applying the standard above, the knowledge required of Defendant is not the degree of his crime, but the extent of the factual circumstances of the incident. Under any interpretation of the "knowingly failed" portion of the statute, Defendant clearly knew what he needed to know. The facts speak for themselves.

■ {16} Because the essence of a vagueness claim rests on a lack of notice, a party may not succeed on the claim if the statute clearly applies to the defendant's conduct. *Duran,* 1998–NMCA–153, ¶ 31, 126 N.M. 60, 966 P.2d 768. Defendant knew he was drunk and obnoxious at his house the afternoon of the crash when the police were called. Defendant knew he was drunk when he took his employer's tanker truck. At the scene of the crash he believed the passenger in the car he struck was dead. He knew Ms. Perea was trapped in the car. Defendant stated his adrenaline started kicking in at the

scene, and he was sobering up somewhat. His training as an Emergency Response Team member in the Washington Department of Corrections started coming back to him. When Defendant fled to his cousin Robert's house in the tanker truck after the incident, he told Robert he had drunk too much and knew he should not be driving.

{17} A fair inference from these facts is that Defendant, in consideration of this knowledge, panicked, called his cousin, and drove away without identifying himself or giving the required information. At his cousin's house, he drank a considerable dose of liquor to knowingly conceal the true extent of his intoxication. He was found and arrested when and where he was not because of his giving aid and information at the scene, but because a witness followed him to his cousin's house.

{18} When Defendant panicked and acted on facts known to him and left the scene without identifying himself, went to his cousin's house, and attempted to obscure the evidence of his intoxication, Defendant indisputably acted on knowledge of specific facts. Those facts made him believe he had been in a crash involving death and serious injury to other persons. He left the scene because of that knowledge. When Defendant declined to contest the evidence against him on either the accident involving injury or death or the tampering with evidence charges, and instead entered his unconditional plea, he acted with knowledge of very specific facts as well.

{19} Under the statute, Defendant argues a fact finder should have to find "that a defendant knew the facts that made his actions a fourth degree felony or a third degree felony." Even if Defendant is correct, Defendant himself deprived any fact finder from assessing the evidence of the case because he pled to the indictment. Defendant declined to contest the actions and statements upon which his charges were based. The facts are as he accepted them, and they are sufficient to show there is no vagueness between the fourth and third degree felonies in this case.

{20} The Court has not considered the facts not of record presented in Defendant's brief by way of footnote. Counsel should not refer to matters not of record in their briefs.

*See Sosa v. Empire Roofing Co.,* 110 N.M. 614, 618, 798 P.2d 215, 219 (Ct.App.1990).

{21} For the foregoing reasons, the sentence imposed by the district court is affirmed.

{22} **IT IS SO ORDERED.**

PICKARD, Chief Judge and ARMIJO, Judge, concur.