IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: May 22, 2014

Docket No. 32,461

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

TREVOR MERHEGE,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew D. Tatum, District Judge**

Gary K. King, Attorney General
Corinna Laszlo-Henry, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Nicole Murray, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Judge.**

**{1}** Trevor Merhege (Defendant), appeals from his conviction for criminal trespass contrary to NMSA 1978, Section 30-14-1(B) (1995). The crime of criminal trespass is defined in pertinent part as "knowingly entering or remaining upon the unposted lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof." Section 30-14-1(B). Defendant asserts that there was insufficient evidence to establish he knew that he lacked consent to enter upon the land of another. Conversely, the State argues that there was sufficient evidence of Defendant's knowledge,

specifically relying on the landowner's testimony that he had not given Defendant permission to enter upon his land. It further contends that the principles of finality and mootness preclude this Court from reviewing this appeal. We conclude that we have jurisdiction to hear this appeal. Further, we agree with Defendant that the landowner's testimony was insufficient to establish Defendant's knowledge and reverse his conviction.

**BACKGROUND**

**{2}**    The relevant facts are not in dispute. On the night of September 3, 2011, Officer Adam Lem of the Portales Police Department was on routine patrol near the intersection of Main Street and East 9th Street. Officer Lem observed Defendant and his friend walking down East 9th Street at approximately 3:40 a.m. Officer Lem got out of his patrol car and yelled, "Hey[,] I want to talk to you." Defendant and his friend did not stop but instead fled on foot around the corner onto Main Street where they proceeded to hop a fence and cut across a private front yard belonging to Gary Watkins. Defendant's friend scaled two fences and jumped over to the neighboring property. Defendant attempted the same maneuver but his clothing became entangled in a chain link fence. Officer Lem caught Defendant when he was entangled in the chain link fence, arrested him, and charged him with resisting and evading an officer, a misdemeanor offense. The charge was later amended to criminal trespass.

**{3}**    Defendant filed a motion to suppress in the magistrate court. The magistrate court granted Defendant's motion and dismissed the case. The State appealed to the district court and Defendant again filed a motion to suppress. After a hearing, the district court denied Defendant's motion and scheduled the matter for trial. Defendant argued that the matter should be remanded for trial in the magistrate court. The district court rejected this argument and proceeded with a trial.

**{4}**    Officer Lem and Watkins testified on behalf of the State. Watkins testified that he had not given Defendant permission to be on his property on September 3, 2011, and had not, as a matter of "custom or . . . habit give[n] people permission to cut across his property at that hour" of the morning. Based upon the evidence presented, the jury found Defendant guilty of criminal trespass.

**DISCUSSION**

**{5}**    Defendant contends the evidence was insufficient to support his conviction. Before we consider the merits of this argument, we first consider the State's argument that we lack jurisdiction to consider this appeal pursuant to principles of finality and mootness.

**I.    Finality/Mootness**

**{6}**    The State contends that we lack jurisdiction to consider this appeal because Defendant is appealing from an order of conditional discharge pursuant to NMSA 1978,

Section 31-20-13(A) (1994). The State asserts that this is a non-final order and that this appeal is moot because Defendant has served his term of probation and been discharged. We disagree.

**{7}** In *State v. Durant*, 2000-NMCA-066, ¶ 1, 129 N.M. 345, 7 P.3d 495, we discussed whether a conditional discharge order should be considered final for purposes of appeal. We recognized that courts in other jurisdictions have held that conditional discharge orders are non-final when they are not accompanied by sentences and lack significant collateral consequences. *Id.* ¶ 9. We drew a distinction between one defendant's felony case, which could be considered in subsequent habitual offender proceedings, and another defendant's contempt case, which lacked any collateral consequences. *Id.* ¶¶ 9-10. We considered the merits of the first defendant's case and dismissed the second defendant's case. *Id.* ¶ 11.

**{8}** The crime of criminal trespass is a misdemeanor, not a felony, and thus cannot be considered as a prior felony conviction under our habitual offender statute. *See* § 30-14-1(E) (defining the crime of criminal trespass as a misdemeanor); NMSA 1978, § 31-18-17(D) (2003) (defining a prior felony conviction for purposes of habitual offender enhancement). Defendant nevertheless contends that he is subject to significant collateral consequences as a result of his conditional discharge. He states that he will be required to disclose the fact of his conviction on applications for employment, college, and other future pursuits. We agree that these are potentially significant consequences even though they are somewhat speculative. *See United States ex rel. Grundset v. Franzen*, 675 F.2d 870, 873 (7th Cir. 1982) (finding a controversy was not moot, reasoning that "[a]lthough the potential legal disabilities facing [the defendant] as a result of his misdemeanor conviction are somewhat more speculative than those facing a convicted felon, the possibility of a disability exists"). We note that a contrary result would effectively immunize the proceedings at trial from appellate review and conclude that we have jurisdiction to consider this appeal.

## II.      Sufficiency of the Evidence

**{9}** Turning to the merits, Defendant contends the evidence was insufficient to support his conviction.[1] In reviewing this claim, we examine the record to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. We "view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging

---

[1]Defendant also contends the district court erred in failing to remand this case to the magistrate court after reversing the magistrate court's grant of Defendant's motion to suppress. However, "the district court has concurrent original jurisdiction over misdemeanor cases, . . . and the defendant has no right to have the case heard in magistrate court[.]" *State v. Heinsen*, 2005-NMSC-035, ¶ 23, 138 N.M. 441, 121 P.3d 1040. We thus reject this argument.

all permissible inferences therefrom in favor of the verdict." *Id.*

**{10}** Defendant was convicted of criminal trespass contrary to Section 30-14-1(B), which defines the crime as "knowingly entering or remaining upon the unposted lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof." The jury was instructed that, in order to find Defendant guilty, the State had to prove beyond a reasonable doubt that Defendant "entered property belonging to . . . Watkins without permission" and "knew or should have known that permission to enter had been denied[.]" Defendant contends that the State failed to present sufficient evidence that he knew that Watkins had denied him permission to enter his land.

**{11}** It is undisputed that Watkins did not give Defendant permission to enter his land. It is also undisputed that Watkins did not deny or withdraw consent to Defendant to enter his land. The determinative question is whether we can presume, as a legal matter, that the general public, including Defendant, had permission to enter upon Watkins' unposted land or whether such entry constitutes a violation of Section 30-14-1(B). In interpreting Section 30-14-1(B), "our main goal is to give effect to the Legislature's intent." *State v. Almanzar*, 2014-NMSC-001, ¶ 14, 316 P.3d 183 (alterations, internal quotation marks, and citation omitted).

> To discern the Legislature's intent, the Court looks first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended. Where the language of a statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation.

*Id.* (alterations, internal quotation marks, and citations omitted).

**{12}** Where private land is posted with a "no trespassing" sign, a person must possess written permission from the owner or person in control of the land in order to enter upon it. Section 30-14-1(A). A person does not need written permission to enter upon the land of another in the absence of a "no trespassing" sign. Section 30-14-1(B). Instead, a person is allowed to enter upon such land unless he or she "know[s] that . . . consent to enter or remain is denied or withdrawn by the owner or occupant thereof." *Id.* The statute provides that "[n]otice of no consent to enter shall be deemed sufficient notice to the public and evidence to the courts, by the posting of the property at all vehicular access entry ways." *Id.*

**{13}** In *State v. Duran*, we recognized that "[p]osting of property is only one way to place an individual upon notice that he is not permitted upon another's property." 1998-NMCA-153, ¶ 34, 126 N.M. 60, 966 P.2d 768, *abrogated on other grounds by State v. Laguna*, 1999-NMCA-152, 128 N.M. 345, 992 P.2d 896. We recognized that, even absent any posting, there was "direct and circumstantial evidence" that the defendant in *Duran* knew that he was not authorized to enter upon the property in question. 1988-NMCA-153, ¶ 34. The landowner testified that she told the defendant to "stop bothering her" and phoned

4

the police on a number of occasions concerning the defendant's entry on her property. *Id.* (internal quotation marks and citation omitted)

**{14}** Here, there was no such evidence. Unlike the landowner in *Duran*, Watkins did not place Defendant on notice that he was not permitted on his property. On the contrary, Watkins testified that he did not know Defendant prior to the night in question and had never communicated with him in any way. We conclude that Watkins did not deny or withdraw consent to enter his land to Defendant.

**{15}** The fact that the statute specifically refers to the posting of the property at all vehicular access entry ways as being sufficient evidence that the public does not have consent to enter suggests that the lack of such posting reveals that the public *does* have consent to enter. If Watkins had a subjective intent to limit access to his property, he had to reasonably communicate it to the public in general or to Defendant in particular, by posting or by some other means. *Id.* Absent such communication, we agree with Defendant that the State presented insufficient evidence that Defendant knew that he lacked consent to enter upon Watkins' land. As a result, we reverse his conviction for criminal trespass.

**CONCLUSION**

**{16}** For the foregoing reasons, we reverse Defendant's conviction and remand to the district court with instructions to vacate Defendant's conviction.

**{17}    IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**CYNTHIA A. FRY, Judge**