IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2017-NMSC-016

Filing Date: March 30, 2017

Docket No. S-1-SC-34775

STATE OF NEW MEXICO,

     Plaintiff-Petitioner,

v.

TREVOR MERHEGE,

     Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett Baur, Chief Public Defender
C. David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**CHÁVEZ, Justice.**

**{1}**    At approximately 3:40 a.m., with a police officer in pursuit, Defendant Trevor Merhege ran through the front yard of a private residence that was enclosed by a three foot high wall. He became entangled on a chain link fence as he attempted to jump over an adjoining fence into the back yard of the residence. He was convicted of criminal trespass. Because the property was not posted, the State was required to prove that Merhege knew that he was not permitted to enter the property. Merhege contended that there was insufficient evidence to support this knowledge requirement. The Court of Appeals agreed and reversed

1

his conviction, concluding that because the property's driveway was not posted with a "no trespassing" sign and the property owner gave no other explicit warnings not to enter, Merhege and the public at large were presumptively granted permission to enter the property. *State v. Merhege*, 2016-NMCA-059, ¶¶ 12, 14-15, 376 P.3d 867. We reverse the Court of Appeals and reinstate Merhege's conviction for criminal trespass because the wall surrounding the property's front yard, the purpose of his entry, and the time of his entry provided sufficient circumstantial evidence for the jury to find that Merhege knew that he did not have consent to enter the property.

**BACKGROUND**

**{2}** On September 3, 2011, Portales Police Officer Adam Lem was patrolling in his vehicle at around 3:40 a.m. when he saw two individuals out walking. Officer Lem wished to speak with them, so he stepped out of his vehicle and "hollered at them." According to Officer Lem, the individuals looked back at him and then took off running. He pursued. They cut across the front yard of a residence at 901 South Main Street. One of the individuals then climbed onto a chain link fence and boosted himself over a wooden fence dividing the front yard from the back yard. Merhege, who was the second person, attempted the same maneuver but caught his shoelace on the chain link fence.

**{3}** The residence at 901 South Main is located on the corner of Main Street and East 9th Street. Officer Lem testified that a three foot high brick wall ran along the border of the property on both streets and enclosed the front yard of the residence.[1] Officer Lem also noted that there was an area where the public could enter the front yard and access a sidewalk that went up to the front door. There were no signs or postings at the property that would indicate that trespassing was forbidden or that members of the public were not permitted to enter the property.

**{4}** The other side of the front yard of 901 South Main was bordered by a chain link fence which met with a slightly higher wooden fence that divided the front yard from the back yard. Officer Lem testified that the chain link fence appeared to be a dividing fence between 901 South Main and a neighboring property and did not enclose anything. The chain link fence did not go all the way to the road or otherwise obstruct access from the street to the property. The area between the two fences was where Officer Lem arrested Merhege for resisting, evading, or obstructing an officer, a charge that was later amended to criminal trespass.

**{5}** Gary Watkins lived at 901 South Main on the night of the incident. He was not aware that Merhege had entered his property until the police informed him around three weeks later. Watkins had never met Merhege.

---

[1]Although the actual size of the wall was disputed before the Court of Appeals, Merhege concedes, for purposes of this appeal, that the wall was three feet high.

**{6}** The State chose to pursue a criminal trespass charge against Merhege, and a jury convicted him. The Court of Appeals reversed his conviction, reasoning that the evidence presented at trial was insufficient to establish the elements of criminal trespass. *Merhege*, 2016-NMCA-059, ¶¶ 9-16. The Court of Appeals stated that "[t]he determinative question is whether we can presume, as a legal matter, that the general public, including Defendant, had permission to enter upon Watkins' unposted land or whether such entry constitutes a violation of [the criminal trespass statute]." *Id.* ¶ 11. The Court of Appeals then opined that "[t]he fact that the statute specifically refers to the posting of the property at all vehicular access entry ways as being sufficient evidence that the public does not have consent to enter suggests that the lack of such posting reveals that the public *does* have consent to enter." *Id.* ¶ 15. We granted certiorari to resolve only the narrow issue of "[w]hether, as a matter of law, the general public is presumptively granted permission to enter upon unposted lands." *State v. Merhege*, 2016-NMCERT-___ (June 1, 2016). We conclude that as a matter of law the general public is not presumptively granted permission to enter upon unposted lands, but instead permission to enter unposted lands depends on the circumstances of the individual's entry.

**DISCUSSION**

**{7}** New Mexico law provides different standards for criminal trespass on private land depending on whether the land has been properly posted with "no trespassing" signs. To satisfy New Mexico's posting requirements, a person lawfully in possession of private property must post conspicuous notices (1) parallel to and along the exterior boundaries of the property; (2) at each access point, including roadways; and (3) every 500 feet along the exterior boundaries of the property if it is not fenced. NMSA 1978, § 30-14-6(A) (1979); *see also* § 30-14-6(B) (defining requirements for posted notices). If private land has been properly posted, a person commits criminal trespass when he or she enters or remains upon the property without written permission from an owner or person in control of the property. NMSA 1978, § 30-14-1(A) (1995); *see also Holcomb v. Rodriguez*, 2016-NMCA-075, ¶ 23, 387 P.3d 286 (holding "that Section 30-14-6 sets out a standard by which a property may be deemed 'posted' " for purposes of determining whether an intruder can be prosecuted under Section 30-14-1(A)). If private land is not properly posted under the statutory requirements (unposted land), as in this case, then a person can only commit criminal trespass by entering or remaining upon the property "knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof." Section 30-14-1(B). With respect to unposted land, New Mexico law also specifies that "[n]otice of no consent to enter shall be deemed sufficient notice to the public and evidence to the courts, by the posting of the property at all vehicular access entry ways." *Id.* Thus, we must determine whether posting at vehicular access entry ways is the only manner of providing constructive notice under the statute.

**{8}** Current New Mexico criminal trespass standards evolved in a piecemeal fashion over several decades. However, it has been a longstanding requirement that a person know that consent to enter or remain has been denied or withdrawn for that person to be guilty of

3

criminal trespass. *See* 1963 N.M. Laws, ch. 303, § 14-1 (setting forth the mens rea element). The knowledge requirement, and the statutory crime of criminal trespass more generally, predates the Property Posting Act, New Mexico's first posting statute. *See* 1969 N.M. Laws, ch. 195 (enacting Property Posting Act). In 1979, posting requirements were incorporated into the criminal trespass statute and the Property Posting Act ceased to exist as a separate provision. 1979 N.M. Laws, ch. 186, §§ 3-4. Early versions of New Mexico's criminal trespass statute also required that a defendant enter the property with "malicious intent," a requirement that was removed in 1981, 1981 N.M. Laws, ch. 34, § 1, thereby expanding the conduct criminalized under the statute to include non-malicious entries. The requirement that an intruder on private posted land possess written permission was later added to the criminal trespass statute in 1991. 1991 N.M. Laws, ch. 58, § 1. The second sentence of Section 30-14-1(B), which asserts that posting at all vehicular access entry ways is sufficient notice of no consent to enter unposted land, was added to the provision in 1995. 1995 N.M. Laws, ch. 164, § 1. The intent of this added language was likely to provide some definitive method for possessors of smaller plots of land to "post" their property and warn the public against intrusions where the formalities of posting, such as posting every 500 feet along the boundary of the property, are impracticable. However, there is no indication that the Legislature intended that posting at all vehicular access entry ways be the *exclusive* method of providing notice to members of the general public that they are not permitted to enter the unposted property. *See Holcomb*, 2016-NMCA-075, ¶ 21 (interpreting the statute's posting requirements "to indicate the Legislature's intent to establish a standard by which the public may be placed on direct notice that unauthorized entry upon posted land is disallowed and will be subjected to legal consequences, *not an intent to exempt from liability all unauthorized entries onto private property that has not been posted.*" (emphasis added)).

**{9}**     Because we cannot ascertain any legislative intent to make posting at vehicular access entry ways the sole manner of giving notice that consent to enter unposted property has been denied for purposes of criminal trespass, we reject the Court of Appeals' statement below that "[t]he fact that the statute specifically refers to the posting of the property at all vehicular access entry ways as being sufficient evidence that the public does not have consent to enter suggests that the lack of such posting reveals that the public *does* have consent to enter." *Merhege*, 2016-NMCA-059, ¶ 15. No such presumption applies under Section 30-14-1(B).

**{10}**     There is no evidence that Watkins' property was posted in any manner, and Watkins had never met or spoken with Merhege. Therefore, our remaining inquiry is whether there was sufficient circumstantial evidence for the jury to conclude that Merhege knew that he was not permitted to enter 901 South Main at the moment that he entered the property. New Mexico's Uniform Jury Instructions provide that when land is unposted, the knowledge element of criminal trespass requires a finding beyond a reasonable doubt that "[t]he defendant knew or should have known that permission to enter [the land] . . . had been

4

[denied]." UJI 14-1402 NMRA.[2] There are two different ways to prove the knowledge element of criminal trespass of unposted land. First, under the statute a defendant's knowledge of no permission to enter land is presumed when vehicle access entry ways are posted. Section 30-14-1(B). Second, the knowledge element may also be established through a sufficient quantity of direct or circumstantial evidence. *State v. Duran*, 1998-NMCA-153, ¶ 34, 126 N.M. 60, 966 P.2d 768, *abrogated on other grounds by State v. Laguna*, 1999-NMCA-152, ¶ 23, 128 N.M. 345, 992 P.2d 896. For instance, in *Duran* there was sufficient evidence to sustain a criminal trespass conviction based on the defendant's repeated intrusions onto the property and flights from the property when police arrived, coupled with a warning by the property's occupant to " 'stop bothering her.' " 1998-NMCA-153, ¶ 34; *see also State v. McCormack*, 1984-NMCA-042, ¶¶ 6-8, 11-15, 101 N.M. 349, 682 P.2d 742 (sustaining a criminal trespass conviction against a journalist because the area was posted with signs, warnings were given that there would be no exceptions, and trespassers received verbal warnings as they crossed a barricade, despite the journalist's belief that the warnings did not apply to members of the press).

**{11}** In a substantial evidence review, our analysis is limited to "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. In so doing, we accord deference to the jury's verdict by "view[ing] the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* Further, we do not reweigh the evidence, substitute our judgment for the jury's judgment, or otherwise interfere with other functions that quintessentially belong to the jury. *State v. Trujillo*, 2002-NMSC-005, ¶ 28, 131 N.M. 709, 42 P.3d 814. Applying this deferential standard of review, we conclude that the totality of the evidence presented to the jury was sufficient to support the jury's conclusion that Merhege knew he was not permitted to enter 901 South Main.

**{12}** First, the fencing around 901 South Main provided circumstantial evidence that unauthorized entries on the property were not permitted. The jury heard testimony that a three foot high brick wall enclosed the front of the property. The jurors could have reasonably determined that the wall communicated to members of the public that they did not have permission to enter the front yard of 901 South Main by any route other than the path to the front door. Indeed, other New Mexico statutes relating to criminal trespass assume that fencing alone provides sufficient notice to the public that there is no consent to enter land. *See* § 30-14-6(A) (imposing requirement to post property every 500 feet along

---

[2]This case does not provide us with an opportunity to examine the propriety of the model instruction because Merhege does not challenge the "knew or should have known" language in the model jury instruction, nor does he argue that the statutory mens rea of "knowing" requires actual knowledge. *Cf. Tanberg v. Sholtis*, 401 F.3d 1151, 1158 n.3 (10th Cir. 2005) (interpreting Section 30-14-1(B) to require "actual knowledge").

its border only when the property is not fenced along its border); NMSA 1978, § 30-14-1.1(C) (1983) (criminalizing any entry upon land by a vehicle off of established roadways or apparent ways of access "when such lands are fenced in any manner"); *see also State v. Foulenfont*, 1995-NMCA-028, ¶ 12, 119 N.M. 788, 895 P.2d 1329 ("Where the unauthorized entry merely consists of climbing over a fence, businesses and other open property are protected under our criminal trespass statute.").

**{13}** Citing to various out-of-state authorities, Merhege urges us to hold that the three foot high wall in this case was insufficient as a matter of law to provide notice of no consent to enter because, according to Merhege, it was not obviously designed to exclude intruders. We decline to adopt this approach because, unlike the statutes from other jurisdictions cited by Merhege, New Mexico's Legislature has not limited the notice function of fencing to those fences which are manifestly designed to exclude intruders, and instead prescribes a more flexible test in which jurors are free to draw their own conclusions with respect to whether a defendant knew that she or he had no consent to enter land based on the notice provided by the fence in question. Section 30-14-1(B). This flexible approach to the knowledge element allows the definition of criminal trespass to comport with the community norms that prevail among jurors.

**{14}** Second, the jury could have also reasonably considered the time of night at which Merhege entered 901 South Main and his purpose in entering the property in determining whether he knew that he did not have permission to enter at that time and for that purpose. Merhege entered the yard at around 3:40 a.m. for the purpose of evading a pursuer. The jurors could have reasonably concluded that Merhege knew he did not have permission to enter the property in this manner because his entry did not comport with social norms in the community. *See Florida v. Jardines*, __ U.S. __, __, 133 S. Ct. 1409, 1415-16 (2013) (discussing how "background social norms" determine whether a would-be trespasser enters land with an implied license to conduct certain activities in a certain manner, such as door-to-door sales). Likewise, the jury's finding that Merhege knew that he did not have permission to enter 901 South Main was supported by the fact that the intrusion here occurred in the dead of the night. *See State v. Cada*, 923 P.2d 469, 478 (Idaho Ct. App. 1996) ("Furtive intrusion late at night or in the predawn hours is not conduct that is expected from ordinary visitors. Indeed, if observed by a resident of the premises, it could be a cause for great alarm.").

**CONCLUSION**

**{15}** Because there was substantial evidence to support Merhege's conviction for criminal trespass, we reverse the Court of Appeals and order the district court to reinstate his conviction.

**{16}** **IT IS SO ORDERED.**

_____

6

                                    **EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**BARBARA J. VIGIL, Justice**


_____
**JUDITH K. NAKAMURA, Justice**