In the DISCIPLINARY MATTER INVOLVING KEVIN G. BRADY, Attorney.

Supreme Court No. S–16342

Supreme Court of Alaska.

October 28, 2016

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices.[Carney, Justice, not participating.]

### Order

Bar Counsel for the Alaska Bar Association and attorney Kevin G. Brady entered into a stipulation for discipline by consent that would result in Brady's six-month suspension from the practice of law in Alaska. The Bar Association's Disciplinary Board approved the stipulation and now recommends that we do so, as well, and so suspend Brady. The facts of Brady's misconduct are set forth in the stipulation, which is attached as an appendix. We take these facts as true,[1] and we apply our independent judgment to the sanction's appropriateness.[2]

Based on the uncontested facts we agree with the legal analysis—set out in the stipulation—that a six-month suspension is an appropriate sanction for Brady's misconduct. Accordingly:

Kevin G. Brady is SUSPENDED from the practice of law in Alaska for a period of six months, effective November 28, 2016. In addition:

1. Although no claims presently are pending, Brady shall make full restitution of any amounts owed to the Lawyers' Fund for Client Protection, to the Alaska Bar Association, and for client fee arbitration awards should such matters subsequently arise;

2. Brady shall pay $2,500 to the Alaska Bar Association within 30 days from entry of this order for disciplinary costs and fees incurred in this case; and

3. As a condition of reinstatement to practice, Brady shall be supervised for a period of six months by a supervising attorney acceptable to Bar Counsel.

Entered by direction of the court.

### Appendix

IN THE SUPREME COURT OF
THE STATE OF ALASKA

In The Disciplinary Matter Involving ATTORNEY B, Respondent.

Supreme Court No. S–16342

**CONFIDENTIAL**

ABA Membership No. B

ABA File No. 2015D060

**STIPULATION FOR DISCIPLINE
BY CONSENT PURSUANT TO
ALASKA BAR RULE 22(h)
PROPOSED ORDER**

September 26, 2016

**Certification of Service**

---

1. Cf. *In re Miles*, 339 P.3d 1009, 1018 (Alaska 2014) (stating we independently review entire disciplinary proceeding record while affording great weight to Disciplinary Board's findings of fact).

2. *Id.*

I certify that on September 26, 2016, a copy of the above-named documents were mailed to the Attorney for Respondent at his address of record.

By /s/ Annette Blair
ANNETTE BLAIR

## BEFORE THE ALASKA BAR ASSOCIATION DISCIPLINARY BOARD

In The Disciplinary Matter Involving KEVIN G. BRADY, Respondent.

ABA Membership No. 9211068

ABA File No. 2015D060

## STIPULATION FOR DISCIPLINE BY CONSENT PURSUANT TO ALASKA BAR RULE 22(h)

Pursuant to Alaska Bar Rule 22(h), Kevin G. Brady, Respondent, and Louise R. Driscoll, Assistant Bar Counsel, stipulate as follows: .

### JURISDICTION AND VENUE

1. Kevin Brady is, and was at all times pertinent, an attorney at law admitted to practice by the Supreme Court of Alaska, and a member of the Alaska Bar Association. At all times relevant, Mr. Brady practiced law in Anchorage, Third Judicial District, Alaska.

2. Mr. Brady is, and was at all times pertinent, subject to the Alaska Rules of Professional Conduct ("ARPCs") and to Part II, Rules of Disciplinary Enforcement, Alaska Bar Rules, giving the Alaska Supreme Court and the Disciplinary Board of the Bar jurisdiction to resolve this matter.

### BACKGROUND FACTS

*Trial Court and Appellate Proceedings*

3. Following a referral from the Alaska Supreme Court, the Bar opened this grievance for investigation. This stipulation addresses breaches of duties by Mr. Brady owed to his client to be diligent during civil litigation (Rule 1.3) and to the court to expedite litigation during civil appeal proceedings (Rule 3.2).

4. A taxi cab driver sexually assaulted his passenger E.G. Attorney KeriAnn Brady of Brady Law Office filed a civil complaint for damages on Ms. G's behalf on August 6, 2013, in Anchorage Superior Court against the cab owner and permit holder.

5. Attorney James Brennan appeared on behalf of defendants and answered the amended complaint on December 3, 2013, responding to an application for entry of default that Ms. Brady filed. On December 4, 2013, the court issued the initial pretrial order.

6. On January 9, 2014, defendants made an offer of judgment in the amount of $5,000. A distribution stamp reflects that the Brady Law Office distributed the offer of judgment to its client. Plaintiff did not accept the offer which was considered withdrawn after ten days under Alaska Civil Rule 68.

7. On January 16, 2014, defendants filed a third party complaint and asked to add the cab driver as a third party defendant. On January 31, 2014, the court allowed the addition of the third party.

8. On February 10, 2014, defendants filed a summary judgment motion. Defendants argued that-the-driver leased the taxicab under a chauffeur's lease agreement and was an independent contractor, not an employee. Defendants denied they negligently failed to conduct an adequate background check and failed to train and supervise the driver properly because the Municipality of Anchorage performed those functions under the municipal chauffeur licensing regulations.

9. Brady did not timely oppose the summary judgment motion.

10. On March 4, 2014, the court granted defendants' motion for summary judgment. On the same day, four days after the opposition was due to be filed, plaintiff, through her counsel, Mr. Brady, moved for an extension of time to file the opposition.

11. Contending there was no excusable neglect to warrant setting aside the order, defendants opposed the request for additional time. Mr. Brennan remarked on his inability over the past several months to reach Mr. Brady to discuss mutual exchange of initial disclosures and to establish a trial schedule.

At the same time, defendants filed a proposed judgment.

12. On March 25, 2014, the court denied plaintiff's motion for additional time. The court also granted defendants' proposed final judgment and dismissed the case.

13. On March 27, 2014, defense counsel moved for attorneys' fees, enhanced by defendants prevailing on the offer of judgment. They also filed a cost bill.

14. On April 1, 2014, Mr. Brady moved for reconsideration of the orders granting summary judgment and denying plaintiff's motion for extension of time. After allowing defendants time to respond, the court denied the motions for reconsideration on May 28, 2014.

15. The final judgment was first distributed on March 25, 2014. On June 30, 2014, the court filed a final judgment which included its calculation of attorney's fees. Under Appellate Rule 204(a)(5), Mr. Brady should have filed an appeal on the merits in April with the time to appeal running from the initial entry of final judgment in March.

16. Mr. Brady filed a notice of appeal on July 24, 2014. Appellees filed a motion to strike the appeal as untimely. Mr. Brady filed an opposition to the motion to strike, filing it eight days late. The Supreme Court allowed the appeal to proceed to avoid injustice, exercising its authority under Appellate Rule 521.

17. The Supreme Court issued its opening notice on September 11, 2014, setting out deadlines for preparation of the file and transcripts.

18. On April 10, 2015, the Alaska Supreme Court issued an order to show cause why Mr. Brady should not be sanctioned for his failure to file documents by their due dates and his failure to file timely motions for extension of the deadlines to file those documents. The order detailed a pattern of delay, missed deadlines, and failure to request extensions prior to the due date.

19. The court ordered Mr. Brady to show Cause by April 17, 2015. Mr. Brady did not file a response to the order to show cause by that deadline.

20. After the appellate clerk called Mr. Brady to remind him to respond, he filed a response on April 23. He described that his failure to file timely pleadings was "somewhat resultant from caseload volume and frequency of court appearances which impacts office production." Mr. Brady admitted that he was at fault for failing to file a timely response to the show cause order and he agreed that some sanction was warranted.

21. On May 5, 2015, the court personally sanctioned Mr. Brady in the amount of $250 for his failure to file documents by their due dates and his failure to file timely motions for extension of the deadlines to file those documents.

22. The Court further personally sanctioned Mr. Brady an additional $250 for failing to file a timely response to the order to show cause or to ask for an extension of time to file a response. The court additionally ordered Mr. Brady to pay the appellees' full reasonable attorney's fees for the time spent in filing their motion to dismiss the appeal for failure to file a brief. The court directed appellees to file an affidavit of fees on or before May 15, 2015. The court ordered Mr. Brady to pay the attorneys' fees no later than June 1, 2015.

23. On June 26, 2015, appellees filed a notice that Mr. Brady had not paid their attorney fees, despite counsel sending Mr. Brady a June 12 e-mail reminder of the overdue payment.

24. Mr. Brady paid the fees on June 30, 2015.

25. On July 9, 2015, the clerk of the appellate courts e-mailed Brady at 8:47 a.m. to ask about the status of the sanctions payment. Mr. Brady paid the $500 sanction at 9:56 a.m., but the payment was mistakenly made to the trial court clerk's office rather than the appellate clerk's office.

26. On July 9, 2015, the court issued an order to show cause why Brady should not be personally sanctioned $100 for his failure to pay timely the personal sanctions of $500 that the May 5, 2015, order directed him to pay. The court also questioned his failure to

pay on or before June 1, 2015, the attorney fees award of $520. The court ordered him to respond by July 17, 2015 and warned no extension requests would be granted. The order was copied to Bar Counsel

27. On July 21, 2015, the court ordered Mr. Brady to pay opposing counsel $250 to reimburse opposing counsel for the time to e-mail him a reminder to pay the fee award and to file the noncompliance notice. The court ordered Mr. Brady to pay $250 in fees by August 3, 2015, and to notify the court when payment was made. Mr. Brady filed a notice of compliance on July 24, 2015.

28. On September 25, 2015, the Court issued an opinion in Supreme Court Case No. S–15634, affirming the trial court's dismissal of the plaintiff's claims and denying the plaintiff's late-filed motion to extend time to oppose summary judgment as well as the motion for reconsideration or relief from judgment. The court said that plaintiff's attorneys never demonstrated the failure to timely request an extension of time was caused by excusable neglect.

29. Mr. Brady promptly wrote his client to tell her that he lost the appeal and this his failure to file an opposition was not excusable. He informed her that she might have a cause of action against him but that he could not provide her with any legal advice on that issue and she would need to consult with another attorney about that.

*Disciplinary Proceedings*

30. In its May 5, 2015 sanctions order, the court referred this matter to the Bar's discipline counsel, "[I]n light of the recent public censure administered against Brady in open court on August 28, 2013 for neglect of client matters." The court directed the Bar Association to "report back to the court on the status of the matter no later than **July 6, 2015,** and every [30 days] thereafter until the matter is resolved." (Emphasis in original.) (A copy of the May 5, 2015 order is attached as Exhibit 1.)

31. On June 10, 2015, Bar Counsel opened a confidential formal investigation into issues of neglect and failure to respond to court orders in the trial and appellate court cases. Under Bar Rule 22(a), Mr. Brady had to provide full and fair disclosure in a verified writing of all facts and circumstances pertaining to the grievance.

32. Mr. Brady timely filed his response. He explained that the court referral arose from "a convergence of circumstances within our office in February and March of 2015." For unclear reasons the briefing deadline for the trial court litigation did not get entered on to the law firm's calendar. Mr. Brady explained that his office discontinued using its calendaring and case management software program that had been in place since June 2012 for a new system. During the transition to the new software program, the calendar system was manually updated with staff entering the information.

33. Mr. Brady explained that during the pendency of the appeal, the law office had a caseload consisting of one administrative appeal, one original state procurement code contract controversy, nineteen Child in Need of Aid cases, seventeen misdemeanor criminal matters, thirty eight felony criminal matters, twenty-eight civil cases, three delinquency cases, one criminal appeal before the Alaska Court of Appeals and two civil appeals in the Alaska Supreme Court. This summary excluded all criminal probation matters.

34. Mr. Brady explained that during the same period of time, the office appeared at approximately 400 separate hearings in five different courts for the 116 active pending cases. The office also conducted two CINA trials, five felony criminal trials, and a civil trial, meeting pleading deadlines or timely requesting extensions of the deadlines in state and federal courts for civil and criminal matters and appeals.

## DISCIPLINARY VIOLATIONS

35. Alaska Rule of Professional Conduct 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

36. Mr. Brady violated Rule 1.3 by failing to act with reasonable diligence on his client's behalf which included failure to pro-

vide pretrial discovery, failure to meet deadlines established under the' scheduling orders in the trial and appellate proceedings, failure to file responsive pleadings timely, failure to answer show cause orders timely, and failure to pay sanctions and attorney fees timely. Mr. Brady failed to control his work load so that he could handle this matter competently.

37. Alaska Rule of Professional Conduct 3.2 states that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

38. Mr. Brady failed to prosecute his client's claim in both the trial and appellate courts without undue delay. By failing to meet court-imposed deadlines in both trial and appellate courts, Mr. Brady failed to make reasonable efforts to expedite litigation.

### SANCTION ANALYSIS

39. The American Bar Association Standards for Imposing Lawyer Sanctions (1986) ("ABA Standards"), adopted in *In re Buckalew*, 731 P.2d 48 (Alaska 1986), and reported decisions of the Alaska Supreme Court, govern the sanctions for respondent's misconduct.

40. Under ABA Standard 3.0, the following factors are to be considered in imposing sanctions after a finding of lawyer misconduct:

(a) the duly violated;

(b) the lawyer's mental state;

(c) the actual or potential injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

41. These factors are addressed in a three part methodology: 1) determine the first three factors; 2) determine recommended sanction; and 3) determine whether aggravating or mitigating circumstances exist. *In Re Schuler*, 818 P.2d 138, 140 (Alaska 1991).

### Part 1: Duty Violated; Lawyer's Mental State; Actual or Potential Injury

#### A. Duty Violated

42. Violation of ARPC 1.3 is a violation of a duty owed to clients. *See* ABA Standards 4.0 Violations of Duties Owed to Clients. Violation of ARPC 3.2 is a violation of a duty owed to the legal system. *See* ABA Standards 6.0 Violations of Duties Owed to the Legal System.

#### B. Mental State

43. Under the ABA standards:

" 'Intent' is the conscious objective or purpose to accomplish a particular result."

" 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."

" 'Negligence' is the failure of the lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."

44. For purposes of the violations of the ARPCs listed above, the parties agree the history of neglect at the trial court level and the need for the appellate court to issue orders to show cause and to issue sanctions to compel performance supports a finding that Mr. Brady acted knowingly.

#### C. Actual or Potential Injury

45. Mr. Brady's neglect resulted in the dismissal of his client's case—a serious injury. His continuing neglect caused delay and required unnecessary intervention from the appellate court. Mr. Brady's failure to abide by appellate procedures interfered with the timely and efficient administration of justice.

### Part 2: Recommended Sanction under ABA Standards

46. ABA Standards § 4.4 sets out the sanctions for lack of diligence. Section 4.42 provides that suspension is generally appropriate when:

**6**

(a) a lawyer knowingly fails to perform services for a client and cause injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

47. ABA Standards § 6.2 sets out the sanctions for failure to expedite litigation and abuse of the legal process.

48. Section 6.22 provides:

Suspension is appropriate when a lawyer knows that he is violating a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

### Part 3: Aggravating and Mitigating Factors

49. ABA Standards § 8.0 discusses sanctions to be imposed on lawyers engaged in the same misconduct for which they were previously disciplined. Section 8.2 states:

Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

50. The court publicly censured Mr. Brady in 2013 for neglecting an ERISA appeal for a union client. He failed to produce records and failed to oppose a motion for partial summary judgment and did not tell his client that the court had ordered production of trust fund records. His neglect led to a court-ordered audit and damages in the amount of $225,000. Successor counsel minimized the financial harm by negotiating a stipulated judgment of $37,000 to resolve the lawsuit. (A copy of the 2013 Stipulation for Discipline with Consent is attached as Exhibit 2.)

51. Other factors that may be considered in aggravation are set out in § 9.22. In addition to prior disciplinary offenses (9.22(a)), Mr. Brady also has substantial experience in the practice of law.

51. (a) Other factors that may be considered in mitigation are set out in § 9.32. Factors include: absence of a dishonest or selfish motive, 9.32(b); personal or emotional problems, 9.32(c); full and free disclosure to disciplinary board or cooperative attitude toward proceedings, 9.32(e); and remorse 9.32(1).

### OTHER AUTHORITY

52. While other disciplinary cases in Alaska are instructive with respect to the level of discipline that the Alaska Supreme Court may impose for similar misconduct, the range of imposed discipline can vary based on individual facts presented in each disciplinary matter. Mr. Brady and Bar Counsel considered the following reported cases involving neglect: *In re Brion*, 212 P.3d 748 (Alaska 2009) (three year suspension, one year to serve for neglect, failure to communicate, failure to account, and respond to Bar—six clients); *In re Cyrus*, 241 P.3d 890 (Alaska 2010) (lawyer suspended for six months for repeated neglect of client matters, failure to timely appear at court proceedings, failure to communicate with clients, failure to answer disciplinary charges and his admission that he was unable to manage his calendar.)

53. Mr. Brady and Bar Counsel considered the following unreported cases involving neglect: *In re Edgren*, S–15401 Amended Order 3/7/14 (six month suspension stayed on conditions and public censure for client neglect, failure to communicate, failure to refund unearned fee, failure to properly withdraw and failure to respond to fee arbitrator and bar counsel) *In re Austin*, S–15605 Order 8/7/14 (three year suspension with one year stayed for neglect of client matters, failure to communicate, failure to account for and deliver client funds, failure to supervise nonlawyer assistant, failure to return client files and property, failure to safekeep client property, failure to pay fees and costs, and failure to honestly advise clients regarding her ability to provide legal services.); *In re Rosenbaum*, S–15604 Order 7/9/15 (42 month suspension for failure to keep clients reasonably informed, failure to refund unreasonable fees, failure to disclose absence of malpractice, failure to account for fees, and failure to respond to requests from disciplinary authority.)

## STIPULATED DISCIPLINE

54. Subject to approval by the Disciplinary Board of the Bar and by the Alaska Supreme Court, Mr. Brady and Bar Counsel agree that the appropriate level of discipline under Bar Rule 16(a)(2) is a suspension from the practice of law for a period of six months with the period of suspension to become effective thirty days from the entry of the court's order with the following conditions:

1. Bar Counsel and Mr. Brady agree that although no claims are pending, Mr. Brady agrees that he must make full restitution of any amounts owed to the Lawyers' Fund for Client Protection, the Alaska Bar Association, and to any clients for any fee arbitration awards if any such matters subsequently arise.

2. Mr. Brady will pay $2,500 to the Alaska Bar Association for disciplinary costs and fees incurred in his case within thirty days from entry of the court's order.

3. As a condition of reinstatement to practice, Mr. Brady is required to be supervised for a period of six months by a supervising attorney who is acceptable to Bar Counsel.

DATED this 19th day of September, 2016, at Anchorage, Alaska.

ALASKA BAR ASSOCIATION

/s/ Louise R. Driscoll
Louise R. Driscoll
Assistant Bar Counsel
Bar Member No. 8511152

DATED this ___ day of _____ 2016, at _____, _____.

_____
Kevin G. Brady
Respondent Attorney
Bar Member No. 9211068

1. Bar Counsel and Mr. Brady agree that although no claims are pending, Mr. Brady agrees that he must make full restitution of any amounts owed to the Lawyers' Fund for Client Protection, the Alaska Bar Association, and to any clients for any fee arbitration awards if any such matters subsequently arise.

2. Mr. Brady will pay $2,500 to the Alaska Bar Association for disciplinary costs and fees incurred in his case within thirty days from entry of the courts order.

3. As a condition of reinstatement to practice, Mr. Brady is required to be supervised for a period of six months by a supervising attorney who is acceptable to Bar Counsel.

DATED this 19th day of September, 2016, at Anchorage, Alaska.

ALASKA BAR ASSOCIATION

/s/ Louise R. Driscoll
Louise R. Driscoll
Assistant Bar Counsel
Bar Member No. 8511152

DATED this 22nd day of September 2016, at Seattle, Washington.

/s/ Kevin G. Brady
Kevin G. Brady
Respondent Attorney
Bar Member No. 9211068

DATED this 22nd day of Sept, 2016, at Anchorage, Alaska.

/s/ John M. Murtagh
John M. Murtagh
Attorney for Respondent
Bar Member No. 7610119

## CONSENT OF RESPONDENT

Respondent hereby consents, pursuant to Alaska Bar Rule 22(h), to the discipline stipulated above and states that this consent is freely and voluntarily given and is not the subject of any coercion or duress and that respondent admits to the allegations set forth above.

DATED this 22nd day of September, 2016, at Seattle, Washington.

/s/ Kevin G. Brady
Kevin G. Brady
Respondent Attorney
Bar Member No. 9211068

SUBSCRIBED AND SWORN to before me this 22 day of September 2016.

/s/ [illegible text]
Notary Public in and for Seattle, WA
My commission expires: 4/27/20

Exhibit 1

### In the Supreme Court of the State of Alaska

**Erica Gibbs,** Appellant,

v.

**Taylor Taxis, Inc., Taylor Revocable Trust, and L&J Cabs, Inc.,** Appellees.

Supreme Court No. S–15634

**Order**

**Sanctions**

Date of Order: **May 5, 2015**

Trial Court Case # 3AN–13–08668CI

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices

On April 10, 2015, this court issued an order to show cause why attorney Kevin Brady should not be sanctioned for his failure to file documents by their due dates and his failure to file timely motions for extension of the deadlines to file those documents, as follows:

- Brady failed to file a timely notice of appeal;

- Brady failed to respond to appellee's motion to strike the notice of appeal as untimely. (The motion to strike was denied in the interest of justice);

- Brady failed to file a timely notice regarding settlement as required by Appellate Rule 221 and in the Opening Notice sent to the parties, and he failed to file a motion to extend the time to file the required notice;

- Following receipt of the second extension of time to file the opening brief (the request for which was filed late), Brady failed to file a brief by the deadline set in the second extension order, and he failed to file a motion for extension of time to file the brief;

- After receipt of an overdue brief notice and a motion to dismiss filed by appellee for failure to file the brief, Brady filed a motion to extend time to file the brief. That motion was granted;

- Due to the foregoing pattern of delay, missed deadlines, and failure to request extensions prior to the due date, the April 10, 2015 order to show cause was issued, requiring a response by April 17. But Brady did not file a response to the order to show cause by that deadline. He did not file a response until April 23, after he received a reminder call from the appellate clerk. In that response, he indicated that his failure to file timely pleadings was "somewhat resultant from caseload volume and frequency of court appearances which impacts office production" and he admitted that he is "at fault for failing to file an appropriate timely pleading in the Alaska Supreme Court per this court's order of April 10, 2015, and agree[d] that some sanction is warranted and appropriate."

Based on the foregoing, IT IS ORDERED: Attorney Kevin Brady is personally sanctioned in the amount of $250 for his failure to file documents by their due dates and his failure to file timely motions for extension of the deadlines to file those documents.

Brady is further personally sanctioned an additional $250 for failing to file a timely response to the order to show cause or to ask for an extension of time to file a response.

In addition, Brady must pay the appellees' full reasonable attorney's fees for the time incurred in filing their motion to dismiss the appeal for failure to file a brief. Appellees shall file an affidavit of fees on or before **May 15, 2015.**

In light of the recent public censure administered against Brady in open court on August 28, 2013 for neglect of client matters, this matter is referred to the Alaska Bar Association's discipline counsel. The Bar Association shall report back to the court on the status of the matter no later than **July 6, 2015,** and every [30 days] thereafter until the matter is resolved.

Entered at the direction of the court.

Clerk of the Appellate Courts

/s/ <u>Marilyn May</u>
Marilyn May

Exhibit 2

BEFORE THE ALASKA BAR ASSOCI-
ATION DISCIPLINARY BOARD

In The Disciplinary Matter Involving KEV-
IN G. BRADY, Respondent.

ABA Membership 9211068

ABA File No. 2011D107

### STIPULATION FOR DISCIPLINE BY CONSENT PURSUANT TO ALASKA BAR RULE 22(h)

Pursuant to Alaska Bar Rule 22(h), Kevin G. Brady, Respondent, and Louise R. Driscoll, Assistant Bar Counsel, stipulate as follows:

### JURISDICTION AND VENUE

1. Kevin Brady is, and was at all times pertinent, an attorney at law admitted to practice by the Supreme Court of Alaska, and a member of the Alaska Bar Association. At all times relevant, Mr. Brady practiced law in Anchorage, Third Judicial District, Alaska.

2. Mr. Brady is, and was at all times pertinent, subject to the Alaska Rules of Professional Conduct ("ARPCs") and to Part II, Rules of Disciplinary Enforcement, Alaska Bar Rules, giving the Alaska Supreme Court and the Disciplinary Board of the Bar jurisdiction to resolve this matter.

### BACKGROUND FACTS

3. Mr. Brady represented Don Crane and AVM, Inc., in an Employee Retirement Income Security Act, ("ERISA") action filed in federal court. The suit alleged delinquent contributions to multi-employer trust funds. The case was captioned *Alaska Plumbing & Pipefitting Industry Pension Fund, et al. v. AVM, Inc.*, 3:09-cv-0044-HRH.

4. On April 6, 2009, Mr. Brady filed an entry of appearance, answer and counterclaim to the complaint. He also wrote plaintiff's counsel to explain AVM's perspective, "in the hopes of avoiding costly litigation regarding this matter."

5. Alaska Plumbing & Pipefitting Industry Pension Fund ("Trust Funds") filed a motion for partial summary judgment on February 1, 2010, in which, among other points, they asked the court to compel production of records and to compel AVM to cooperate in scheduling an audit.

6. Mr. Brady did not tell the client that the motion had been filed. Mr. Brady did not file a response or opposition to the motion.

7. The court granted the motion on March 10, 2010. The order required AVM to submit to an audit and granted other forms of related relief. Mr. Brady did not tell his client that the court had issued its order.

8. In response to the court's order, the Trust Funds tried to contact Mr. Brady to schedule the audit. He did not reply.

9. The Trust Funds filed a second motion to strike AVM's counterclaim and to hold AVM in contempt for failing to comply with the court's March 10, 2010, order. Mr. Brady did not tell his client that the second motion had been filed. He did not file a response or opposition.

10. On July 29, 2010, the court granted the second motion and entered a partial default judgment against AVM. Mr. Brady did not tell his client that the order had been entered.

11. AVM learned about the prior motions, orders, and judgment when Trust Funds representatives contacted AVM to schedule the court-ordered audit. At this point AVM retained new counsel, attorney Gregory S. Fisher.

12. After the audit was conducted, the Trust Funds demanded an amount in the approximate range of $225,000, from AVM, an amount exclusive of fees, costs, liquidated damages, interest and penalties.

13. Mr. Fisher stated that AVM had several meritorious legal defenses that could have been asserted to the Trust Funds allegations.[1] However, he stated that prevailing

---

1. The Declaration of Don Crane is attached as Exhibit 1. The Declaration was prepared to support a Rule 60(b) motion and sets out in more detail facts pertaining to the underlying case. Following settlement discussions, AVM agreed to

Trust Funds are presumptively eligible for fees and costs in ERISA multi-employer trust fund litigation. Thus, a relatively minor amount of liability may dramatically increase once fees and costs are included. This fact weighed heavily in AVM's decision to accept a stipulated judgment of $37,000 to resolve the lawsuit.

14. AVM later learned that Mr. Brady did not have any legal malpractice insurance, a fact that he did not disclose when he undertook to represent AVM.

## DISCIPLINARY VIOLATIONS

### Count One

### *Competence*

### (ARPC 1.1)

15. Rule 1.1 requires a lawyer to provide competent representation to a client. "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

16. Mr. Brady had experience with ERISA audits for union fringe benefits and by writing counsel he unsuccessfully attempted to trigger negotiations to resolve the matter without litigation. However, he failed to recognize in April 2009 that this case was beyond his limited experience and would involve substantial time and effort that his schedule could not accommodate. Mr. Brady violated Rule 1.1 when he failed to recognize that his limited proficiency and lack of time to gain the requisite knowledge and skill required him to refer his client to another attorney with expertise in ERISA litigation.

### Count Two

### *Neglect*

### (ARPC 1.3)

17. Alaska Rule of Professional Conduct 1.3 requires that a lawyer "shall act with reasonable diligence and promptness in representing a client."

a stipulated judgment rather than incur costs to

18. Mr. Brady violated ARPC 1.3 by failing to timely and diligently advance the interests of his client as set forth above, in particular by failing to file responsive pleadings and to comply with court-ordered audits.

### Count Three

### *Communication*

### (ARPC 1.4)

19. Alaska Rule of Professional Conduct 1.4 addresses communication issues involving case status and malpractice insurance disclosure. ARPC 1.4(a) requires a lawyer to keep a client reasonably informed about the status of a case and to respond promptly to a client's requests for information.

20. ARPC 1.4(c) states in part that a lawyer has to inform clients in writing, "if the lawyer does not have malpractice insurance of at least $100,000 per claim and $300,000 annual aggregate and shall inform the client in writing at any time the lawyer's malpractice insurance drops below these amounts or the lawyer's malpractice insurance is terminated."

21. Mr. Brady violated Rule 1.4(a) and (c) when he failed to keep AVM informed of significant litigation events and failed to advise his client that adverse orders, sanctions, and a judgment had been entered against the client. Mr. Brady also failed to tell his client that he had no malpractice insurance.

### SANCTION ANALYSIS

22. The American Bar Association Standards for Imposing Lawyer Sanctions (1986) ("ABA Standards"), adopted in *In re Buckalew*, 731 P.2d 48 (Alaska 1986), and reported decisions of the Alaska Supreme Court, govern the sanctions for respondent's misconduct.

23. Under ABA Standard 3.0, the following factors are to be considered in imposing sanctions after a finding of lawyer misconduct:

(a) the duty violated;

(b) the lawyer's mental state;

try to vacate the judgment and contest the audit.

(c) the actual or potential injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

24. These factors are addressed in a three part methodology: 1) determine the first three factors; 2) determine recommended sanction; and 3) determine whether aggravating or mitigating circumstances exist. *In Re Schuler*, 818 P.2d 138, 140 (Alaska 1991).

## Part 1: Duty Violated; Lawyer's Mental State; Actual or Potential Injury

### A.  Duty Violated

25. Violations of ARPC 1.1, 1.3, and 1.4 are a violation of duties owed to the client. *See* ABA Standards §§ 4.4 and 4.5.

### B.  Mental State

26. Under the ABA standards:

" 'Intent' is the conscious objective or purpose to accomplish a particular result."

" 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."

" 'Negligence' is the failure of the lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."

27. For purposes of the violations of the ARPCs listed above, Mr. Brady acted negligently.

### C.  Actual or Potential Injury

28. Mr. Brady's negligent acts harmed his client, costing his client money by increasing the damages and requiring additional legal services. His failure to act promptly delayed resolution of issues.

## Part 2: Recommended Sanction under ABA Standards

29. ABA Standards § 4.4 and § 4.5 sets out the sanctions for these violations. Section 4.43 provides:

Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

Section 4.53 provides in part:

Reprimand is generally appropriate when a lawyer:

(b) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.

## Part 3: Aggravating and Mitigating Factors

30. ABA Standards § 9.0 sets out factors that may be considered in aggravation and mitigation. Mr. Brady was admitted to the practice of law in 1992 and has substantial experience, a factor that may be considered in deciding what sanction to impose. (9.22(i)).

31. Mr. Brady and Bar Counsel agree that several factors should serve to mitigate the disciplinary sanction.

- On May 12, 2007, Mr. Brady's home burned down due to an exterior fire of unknown origin and he suffered minor injury. The next 18 months were spent on efforts to rebuild the family home. During this time he attempted to limit his practice to part-time and he let go his support staff. During this same time he became involved in a complex construction arbitration that required him to hire an associate. In August 2009, the arbitrator issued a decision that he considered contrary to the contract issues, evidence and law. There were no adequate grounds for appeal from the arbitration. The arbitration results added to already substantial stress. He struggled with issues of depression for which he began to self-medicate with alcohol. Mr. Brady took no new cases from August 2009 until approximately May 2010 in recognition

that he wasn't functioning as well as he should. However, he contributed approximately 300 hours of pro bono time to a matter involving CINA cases dating back to 2005 which included mental health issues and an extremely dysfunctional family dynamic. He also assisted a close family friend who had a pending dispute with the Alaska Corps of Engineers, donating approximately 100 hours of legal services. In late 2010 he changed the focus of his practice and started to share an office with his wife, also an attorney. He recognized that the isolation of his former office practice had not been beneficial to his mental health and led to major errors in judgment. (9.32(c));

- the absence of a prior disciplinary record (9.32(a));
- absence of a dishonest or selfish motive (9.32(b)); and,
- remorse (9.32(1)).

### Other Authority

32. Mr. Brady and Bar Counsel considered other disciplinary cases in Alaska in which attorneys were publicly reprimanded for isolated misconduct involving issues of competency, neglect, and failure to communicate: *In re James Wendt* (public reprimand by the Disciplinary Board for neglecting a client matter and missing court deadlines in a civil case); *In re Randall Patterson*, Supreme Court No. S–11502 (Order of 7/22/04) (public censure for neglect of a criminal appeal and ignoring multiple court orders to file appellant's brief); *In re Miles*, Supreme Court No. S–12042 (Order of 9/14/05) (90 day stayed suspension and public censure for neglect, failure to account, and failure to provide mandatory responses during the Bar's investigation). *In re Cyrus*, Supreme Court No. S–12247 (Order of 4/3/06) (lawyer suspended for six months and publicly censured for a pattern of neglect and failure to communicate and lack of candor with the court); *In re Pallister*, Supreme Court No. S–14489 (Order of 11/10/2011) (lawyer suspended for two years and one day for neglect leading to entry of $990,621 judgment against client and

publicly censured for failure to respond to the grievance against him.

### STIPULATED DISCIPLINE

33. Subject to approval by the Disciplinary Board of the Bar and by the Alaska Supreme Court, Mr. Brady and Bar Counsel agree that the appropriate level of discipline is a public censure by the Supreme court under Alaska Bar Rule 16(a)(4).

I certify that the primary text of this document was prepared using 13 point Bookman Old Style font.

DATED this 26th day of April, 2013, at Anchorage, Alaska.

ALASKA BAR ASSOCIATION

/s/ Louise R. Driscoll
Louise R. Driscoll
Assistant Bar Counsel
Bar Member No. 8511152

DATED this 25 day of April, 2013, at Anchorage, Alaska.

/s/ Kevin G. Brady
Kevin G. Brady
Respondent
Bar Member No. 9211068

### CONSENT OF RESPONDENT

Respondent hereby consents, pursuant to Alaska Bar Rule 22(h), to the discipline stipulated above and states that this consent is freely and voluntarily given and is not the subject of any coercion or duress and that respondent admits to the allegations set forth above.

DATED this 25 day of April, 2013, at Anchorage, Alaska.

/s/ Kevin G. Brady
Kevin G. Brady
Respondent
Bar Member No. 9211068

SUBSCRIBED AND SWORN to before me this 25th day of April, 2013.

/s/ [illegible text]
Notary Public in and for Alaska
My commission expires: 9–3–13

Exhibit 1

Gregory S. Fisher
DAVIS WRIGHT TREMAINE LLP
701 W. 8th Avenue, Suite 800
Anchorage, Alaska 99501
Telephone: 907–257–5300
Facsimile: 907–257–5399
Email: gregoryfisher@dwt.com
Attorneys for Defendant AVM, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ALASKA PLUMBING & PIPEFITTING INDUSTRY PENSION FUND, et al., Plaintiffs,

vs.

AVM, INC., Defendant.

Case No. 3:09–cv–00044–HRH

**DECLARATION OF DON CRANE**

I, Don Crane, declare under penalty of perjury as follows:

1. I am an adult citizen competent to testify in court. The facts stated here are based on my first-hand knowledge or on facts made known to me by reliable sources, and all such facts are true and accurate to the best of my knowledge and belief.

2. AVM is a mechanical contractor (plumbing, heating, air conditioning, electrical) that was incorporated in 1997. I am currently AVM's Director and registered agent. I previously served as AVM's president for many years. AVM is incorporated under the laws of Alaska, has paid all applicable taxes, and is a corporation in good standing.

3. On August 15, 2000, I signed an agreement on behalf of AVM that subjected AVM to the terms of the 2000–2003 Alaska Pipe Trade collective bargaining agreement. On August 16, 2000, I signed a supplemental agreement on behalf of AVM that obligated AVM to make fringe benefit contributions to Local 375's Pension Trust Fund.

4. I never signed another agreement subjecting AVM to the terms of any other collective bargaining agreement. However, I know that the 2000–2003 Alaska Pipe Trade collective bargaining agreement was replaced by another agreement that covered the period from July 20, 2003 to July 30, 2006. I also know that a subsequent agreement covered the period from July 10, 2006 to June 30, 2009. I never received a copy of any of these agreements. I never received notice of any negotiations. I also know that another agreement covering the period from July 1, 2009 to June 30, 2012 is now in place. I never received a copy of that agreement. I never received any notice of any negotiations for that agreement.

5. Although I never signed any additional agreement on behalf of AVM, AVM continued to make trust fund contributions from 2003 through September 2006. I believe AVM's final contribution was made in October 2006 for the period ending in September 2006.

6. The August 15, 2000 agreement that I signed on behalf of AVM related to the collective bargaining agreement with Local 367 and simply stated that "the undersigned hereby agrees to honor and abide by the terms and conditions of the current version of the collective bargaining agreement referenced above and any successor agreement thereto."

7. The August 16, 2000 supplemental agreement that I signed on behalf of AVM was with Local 375's Pension Trust. With respect to termination, the supplemental agreement stated, "This Agreement shall be effective as of July 15, 2000 and shall continue in effect for the duration of the CBA and any continuation, renewal or extension thereof; provided, however, that the parties may modify or terminate this Agreement in the same manner and at the same time or times as the CBA." (underscore added).

8. Although the August 16, 2000 supplemental agreement linked termination procedures to procedures in the collective bargaining agreement, the 2000–2003 Alaska Pipe Trade collective bargaining agreement never had any provision regarding termination. The nearest provision addressed modification, and it stated that if "either party desire [sic] to modify any portion of any terms hereof, it shall notify the other party, in writing, at least sixty (60) days prior to the expiration

date of this Agreement." There was no provision that specifically addressed termination.

9. Although I do not recall ever receiving copies of the subsequent collective bargaining agreements, I have recently reviewed them. All of the subsequent collective bargaining agreements included the same provision addressing modification at least sixty (60) days prior to the end of an agreement. Not one of the agreements has anything that addresses termination procedures.

10. By September 2006, AVM only had one employee covered by the Alaska Pipe Trade collective bargaining agreement. This was Pat Hubbs. The job AVM was working on was Alpine Terrace in Anchorage. A dispatcher from Local 367, Craig Hatley, called me in September 2006. He advised me that if I did not sign the new contract the Union would recall Pat Hubbs. I told Craig that AVM did not want to sign the new contract.

11. After my conversation with Craig, I wrote and sent a letter dated September 11, 2006. I emphasized that I would not sign the current agreement. I also expressly stated that AVM considered the existing agreement null and void. My intent was and remains to make sure that the Union understood that AVM was terminating its obligations under the Alaska Pipe Trade collective bargaining agreement. Nothing in the collective bargaining agreement addressed termination procedures. Moreover, AVM only had one employee at the time. I therefore believed that AVM had terminated its obligations under the collective bargaining agreement.

12. The Union responded to me on September 14, 2006. The Union told me that I was still obligated under the collective bargaining agreement because "the rollover language binds you to the new version until and unless you terminate the Agreement during the window period prior to expiration in a timely manner." This meant nothing to me at the time and it still means nothing to me. There is no termination provision in any of the collective bargaining agreements. Moreover, there is no "window period" in any of the collective bargaining agreements. Instead, there is an opt out period for modification of terms that is at least sixty (60) days prior to the expiration of an agreement.

13. In February 2007, the Trust Funds requested to audit AVM. AVM's former counsel, Kevin Brady, responded on February 20, 2007. Mr. Brady noted that AVM had discontinued its participation in the collective bargaining agreement. As was the case in September 2006, AVM only had one employee covered by the collective bargaining agreement in February 2007. The employee was Russ Goss and he was working on the North Slope. In response to Mr. Brady's letter, the Trust Funds sent a "routine audit" agreement that had been executed on November 1, 2006. I had never seen this agreement. I do not know how this agreement could modify any of AVM's obligations trader the 2006–2009 Alaska Pipe Trades collective bargaining agreement since it was executed after the agreement took effect.

14. On March 12, 2007, I wrote to the Trust Fund's accountants on behalf of AVM regarding the audit. I explained that the agreement was terminated on September 15, 2006.

15. On April 30, 2008, I wrote to the lawyers representing the Trust Fund. I stated, "This is to advise you that A Viking Mechanical provided written notice of separation on September 13, 2006 from any and all union agreements as of September 15, 2006."

16. It was and remains my intent to make it clear that AVM terminated its obligations under the Alaska Pipe Trade collective bargaining agreement. However, even if I was mistaken in terms of when or whether termination notices had to be served, all of these letters (the September 11, 2006 letter, the February 20, 2007 letter, the March 12, 2007 letter, and the April 30, 2008 letter) were sent "at least sixty (60) days prior to the expiration date" [June 30, 2009] of the 2006–2009 Alaska Pipe Trades collective bargaining agreement. Consequently, I do not see how AVM could have any continuing obligations under the 2009–2012 Alaska Pipe Trades collective bargaining agreement.

17. At no time after September 2006, did AVM make any fringe benefit contributions.

I am not a lawyer. I believed in good faith that I had properly terminated AVM's obligations under the collective bargaining agreement and that I had properly communicated that fact to the Union.

18. The Trust Funds filed suit on March 9, 2009. AVM retained Kevin Brady as counsel. AVM filed an answer and counterclaim on April 7, 2009. After that, I had infrequent communications with Mr. Brady, however it was my understanding that nothing significant was going on in the case.

19. I contacted Mr. Brady by email on or about January 6, 2010. I asked him for a status check. He told me that he was busy but that he would get back to me. I did not hear from him again or speak to him until August 2010. I did not know that anything was going on in my case, I am not a lawyer. I assumed that everything was fine. I assumed that if anything happened my lawyer would let me know.

20. In early August, the Trust Fund or the Union (I forget which) sent me a copy of a July 22, 2010, judgment that the Court had entered. It was at that time that I first learned that the Court had entered judgment against AVM. The judgment stated: "Defendant is contractually bound by the plaintiffs' several collective bargaining agreements and successor agreements to make contributions to the plaintiff trust funds in accordance with the foregoing agreements." The judgment also stated, "Plaintiffs are entitled to audit defendant's records for purposes of computing the contributions owed."

21. Until I received this from the Trust Funds or the Union in early August 2010, I did not know that the Trust Funds had filed any motions. I did not know that the Court had entered prior orders on related subjects. I did not know that anything was going on at all in my case. I have since learned that Mr. Brady never responded or filed any oppositions to any of the motions that the Trust Funds filed.

22. Upon receipt of the judgment, I immediately contacted Mr. Brady. He told me that the Court had entered orders requiring AVM to produce records. He also confirmed

that motions had been filed, that he had never opposed any of the motions, and that the Court had entered a judgment against AVM. He apologized to me. Mr. Brady said something like, "I really let this one get by me." I then asked him to get me a copy of the orders and other documents. He said that he would do that, however he never followed up.

23. My greatest concern regarding the Court's judgment is that it is not clear to which collective bargaining agreements AVM is made subject I believed and believe that I effectively terminated any obligations in September 2006. I also think that AVM was not covered by the 2006–2009 Alaska Pipe Trade collective bargaining agreement because it only had one employee at operative times in question. However, leaving aside those issues, I do not think that AVM is or should be subject to the current 2009–2012 Alaska Pipe Trade collective bargaining agreement. The September 11, 2006, March 12, 2007, and April 30, 2008, letters that I sent were all sent at least 60 days prior to the expiration of the July 10, 2006–June 30, 2009 Alaska Pipe Trade collective bargaining agreement.

24. After receiving the July 29, 2010 judgment, I have done my best to cooperate with the Trust Funds to schedule an audit. An audit of AVM's records was scheduled for October 18, 2010. My new counsel sent me a September 17, 2010 "status report" that the Trust funds filed. The status report states that "The plaintiff's attorney has spoken with the owner of defendant, but defendant continues to refuse to return calls or submit to the audit." This is not true. I spoke with Noelle Dwarski on at least two occasions prior to September 17, 2010. She told me that someone named Joel Steiner (an accountant for the Trust Funds) had been trying to reach me to schedule the audit. I checked my phone and did not see that anyone from Seattle had called me. I called Mr. Steiner. Eventually we were able to get the audit arranged, and it is scheduled for October 18, 2010. I would have had this done before had I known about the Court's March 10, 2010 order.

FURTHER YOUR DECLARANT SAYETH NAUGHT.

DATED this 2 day of June, 2011.

By: /s/ Don L. Crane
Don L. Crane
Director
AVM, Inc.